206 F.3d 932 (9th Cir. 2000)
 MICHAEL SHAWN TAYLOR, Plaintiff-Appellant,
v.
RANCHO SANTA BARBARA, a California General Partnership, and its general partners; CUERVO CORP., a California Corporation; KENNETH E. ECKERT, and LORENA J. ECKERT, Co-Trustees of the Lorena J. Eckert Trust; WARREN J. HOWLAND, Trustee of the Warren J. Howland Trust; MARGARET S. HOWLAND; and FREDERICK RICE, Trustee of the Frederick Rice Trust, Defendants-Appellees.
 No. 98-56204
 UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT
 Argued and Submitted February 17, 2000
Decided March 21, 2000
 
 COUNSEL Robert O. Angle, Angle, Carlson, Goldrick & Roberts, Santa Barbara, California, for the plaintiff-appellant.
 Terry R. Dowdall, Orange, California, for the defendantsappellees.
 Appeal from the United States District Court for the Central District of California; Consuelo B. Marshall, District Judge, Presiding. D.C. No.CV-98-01422-CBM
 Before: James R. Browning, Alfred T. Goodwin, and Susan P. Graber, Circuit Judges.
 GOODWIN, Circuit Judge:
 
 
 1
 Michael Shawn Taylor, age 41, bought a mobile home that was located in a mobile home park, which rents the lot under the privately owned unit to qualified renters. When Taylor learned that spaces would not be rented to persons under 55 years of age, he sued in the district court to challenge as unconstitutional the state and federal statutes that permit park operators to enforce age restrictions. He appeals the Federal Rule of Civil Procedure 12(b)(6) dismissal of his claim. We have jurisdiction under 28 U.S.C. S 1291, and we affirm.
 
 
 2
 The federal Fair Housing Act and California's Mobilehome Residency Law permit otherwise qualified mobile home parks to refuse to rent to tenants aged under 55 years. Apparently for the first time in this circuit, these laws are challenged as inconsistent with the equal protection accretions to the Fifth Amendment, for 42 U.S.C. S 3607 (b)(2)(C), and the Fourteenth Amendment, for California Civil Code S 798.76. I.
 
 BACKGROUND
 
 3
 As apparently is common among mobile home parks, Rancho Santa Barbara rents to mobile home owners the spaces upon which the homes rest. Taylor found and purchased a home to his liking, and then applied for a rental agreement. His application was rejected because of his age. As published in park rules, Rancho Santa Barbara restricts occupancy to persons 55 years old or older. Taylor found that he had 14 years to wait before he could move into his unit.
 
 
 4
 The parties agree that the park's age rule is permitted by both federal and state statutes. The Federal Housing Act (FHA), as amended by the Fair Housing Amendments Act of 1988 (FHAA) and the Housing for Older Persons Act (HOPA), permits landlords to restrict occupancy to persons 55 years of age or older. See 42 U.S.C.S 3607(b)(2)(C). California's Mobilehome Residency Law (MRL) authorizes management of a mobile home park to limit residence on the basis of age, provided that the age restriction complies with the FHA. See Cal. Civ. Code S 798.76. The MRL operates as an exception to California's general proscription of age discrimination in housing. See Cal. Civ. Code SS 51.2, 51.3(c)(4).
 
 
 5
 Taylor argues that the MRL violates the Fourteenth Amendment's Equal Protection Clause and that the FHA, as amended by HOPA, violates the Fifth Amendment's Due Process Clause, which applies equal protection standards to the federal government. See Weinberger v. Weisenfeld , 420 U.S. 636, 638 (1975) (holding that the approach to Fifth Amendment equal protection claims is "precisely the same" as under Fourteenth Amendment). The district court held that both statutory schemes survived equal protection challenge as founded upon rational policy decisions by the respective legislative bodies, and granted the defendant's motion to dismiss for failure to state a claim under Rule 12(b)(6).
 
 
 6
 We review the correctness of the judgment as a question of law. See Johnson v. Knowles, 113 F.3d 1114, 1117 (9th Cir. 1997). The facts alleged in the complaint are deemed admitted and true for purposes of the appeal. See id.
 
 II. DISCUSSION
 A. Rational-Basis Review Applies
 
 7
 We apply rational-basis review to the challenged legislation. Age classifications are not constitutionally suspect, and legislative distinctions based upon age warrant only traditional rational-basis review. See, e.g. , Kimel v. Florida Bd. of Regents, 120 S. Ct. 631, 645-47 (2000); United States v. Jenkins, 734 F.2d 1322, 1327 (9th Cir. 1982) (upholding different treatment accorded youth offenders). Furthermore, Taylor alleges no fundamental right that is infringed by the challenged legislation.
 
 
 8
 Applying rational-basis review, the classification survives equal protection challenge if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose. See Heller v. Doe, 509 U.S. 312, 320 (1993). Under rational-basis review, a legislature "need not actually articulate at any time the purpose or rationale supporting its classification. Instead, a classification must be upheld if there is any reasonably conceivable set of facts that could provide a rational-basis for the classification." Id. (internal quotation marks and string citations omitted). Courts reviewing for a rational basis must accept a legislature's generalizations even when there is an imperfect fit between means and ends; "mathematical nicety" is not required. Id. at 321.
 
 
 9
 B. The Federal Fair Housing Act (As Amended)
 
 
 10
 In 1968, Congress enacted the FHA to prohibit home sellers and landlords from discriminating on the basis of race, religion, national origin, or (later) gender. See Title VIII of Pub.L. 90-284 (Apr. 11, 1968); 42 U.S.C. SS 3601 et seq. In 1988, Congress enacted the FHAA, which amended the FHA and prohibited housing discrimination on the basis of familial status, but Congress provided an exemption for retirement housing communities. Under the FHAA, a housing community could discriminate on the basis of familial status if (1) 80% of the dwellings were occupied by at least one person age 55 or older and the community provided "significant services and facilities" for older persons; or if (2) the housing community was reserved exclusively (100%) for persons age 62 or older. See 42 U.S.C. S 3607(b)(1), (2).
 
 
 11
 The "significant services and facilities" requirement sparked controversy and litigation in the years following the FHAA's enactment in 1988. The Department of Housing and Urban Development issued no fewer than three regulatory attempts to clarify the clause, but the requirement continued to generate public scrutiny. The central criticism was that the exemption for older persons' housing had "proved difficult to implement" and resulted in numerous lawsuits and administrative complaints. Covey v. Hollydale Mobile Home Estates, 116 F.3d 830, 833 (9th Cir. 1997).
 
 
 12
 Subsequently, Congress by a 424 to 5 margin enacted HOPA and eliminated the "significant facilities and services" requirement. See Pub.L. No. 104-76, 109 Stat. 787 (Dec. 28, 1995). Under the current version of the FHA, as amended by HOPA, a community can qualify for the housing-for-olderpersons exemption provided that "at least 80 percent of the occupied units are occupied by at least one person who is 55 years of age or older." 42 U.S.C. S 3607(b)(2)(C)(i) (1996). Rancho Santa Barbara qualifies for the exemption as currently enacted. For this appeal, we will assume that the park would not have qualified for the pre-HOPA exemption, because Taylor alleges that the park offers no special facilities or services.
 
 
 13
 We hold that HOPA's elimination of the "significant services and facilities" requirement was rationally related to the government's legitimate interest in reducing confusion regarding the FHA and its housing-for-older-persons exemption. As stated by Representative Canady, "[t]he term `significant facilities and services' has been a source of confusion and litigation since the passage of the [FHAA]." 141 Cong. Rec. H1496602 (Dec. 18, 1995). Representative Brown echoed this concern: "[T]he `significant facilities and services' standard has . . . been a pain in the neck because it has been vague, it has been difficult, and it has spawned litigation and created confusion." 141 Cong. Rec. S18063-01 at *S18064 (Dec. 6, 1995). Congress reasonably concluded that eliminating the "significant facilities and services" requirement would make the FHA easier to administer and easier to follow. Cf. Covey, 116 F.3d at 833 (noting that requirement "proved difficult to implement").
 
 
 14
 We further hold that the housing-for-older-persons exemption itself, as it stands amended by HOPA, likewise survives equal protection challenge. Congress intended the FHAA to protect families with children while still "fully protect[ing ] the rights of senior citizens who live in retirement communities, and . .. allow[ing] those communities to exclude families with children if they so choose." 134 Cong. Rec. H4607 (daily ed. June 22, 1988). Two courts outside this circuit have upheld the preHOPA housing-for-older-persons exemption. See Seniors Civil Liberties Coalition v. Kemp, 965 F.2d 1030, 1036 (11th Cir. 1992), (holding that exemption did not violate due process rights of aged); Park Place Home Brokers v. P-K Mobile Home Park, 773 F.Supp. 46 (N.D. Ohio 1991) (holding that exemption did not violate equal protection rights of landowners). With the enactment of HOPA, Congress reasserted its intent to protect housing for older persons by broadening and simplifying the housing-for-older-persons exemption.
 
 
 15
 The housing-for-older-persons exemption as amended bears a rational relationship to the government's legitimate interest in preserving and promoting housing for older persons. Congress reasonably determined that older persons have a particular need for an affordable "safe, supportive environment." 141 Cong. Rec. S18063-01 (Dec. 6, 1995) (statement of Rep. Brown). Many live on fixed incomes, have particular health needs, and may no longer need a home big enough for a large family.
 
 
 16
 The housing-for-older-persons exemption permits exempted communities to reduce costs. The exemption permits communities to exist in areas less appropriate or desirable for younger people. Sites typically lack schools or day care facilities. Parks can thrive relatively far from employment centers.
 
 
 17
 The land can be acquired at low cost, and often might otherwise go underused. Senator Feinstein addressed related matters during the debates leading up to the enactment of HOPA.
 
 
 18
 In the city of Hemet, 50 percent of its housing is 55 and-over communities. Removing the seniors-only status and requiring these communities to absorb families with children will result in a dramatic short age of classroom space, and [affect] the tax-base. Demographics are such that the financing of new school construction, in a city that was planned as a retirement community, would not be possible.
 
 
 19
 141 Cong.Rec. S18063-01 at *S18066.
 
 
 20
 The exemption also allows exempted housing communities to offer facilities more appropriate for older persons than for children. For example, communities can devote fewer resources to ensure quiet privacy and child safety. They can build thinner walls, smaller units, and tinier yards. Conversely, communities can devote more resources to facilities and services for older persons. Even though the FHA does not require such facilities, the exemption might rationally promote enhanced services.
 
 
 21
 That Congress drew the line at age 55 -rather than at age 35 or 65 or 67 -does not violate equal protection. The selection of age 55 accommodates those who retire early and those who desire to relocate prior to reaching retirement or very old age, when moving might be more difficult. Furthermore, even though the selection of age 55 -or any age -might be over and underinclusive on the margin, legislatures are given leeway under rational-basis review to engage in such line drawing. In Massachusetts Bd. of Retirement v. Murgia, 427 U.S. 307, 312-23, 316 (1976), the selection of age 50 for mandatory retirement of police officers survived rationality review, even though some officers older than 50 were in better health than some officers younger than 50. That Taylor could construct an alternative statute, one that he would prefer, or that would more narrowly fit the discussed purposes,does not mean that the statute as Congress drafted it is unconstitutional.
 
 C. California's Mobilehome Residency Law
 
 22
 California's MRL also survives rationality review. The MRL operates as an exception to California's general proscription of age discrimination in housing and permits a mobile home park to restrict residence on the basis of age, provided that the restriction "complies with the federal Fair Housing Act." Cal. Civ. Code S 798.76 (MRL); see also Cal. Civ. Code SS 51.2, 51.3(c)(4) (general proscription of age discrimination).
 
 
 23
 Taylor contends that the California scheme is even more arbitrary than the federal scheme -and thus even more clearly violative of equal protection -because it allows discrimination against those under 55 in mobile home housing while prohibiting the same discrimination in all other forms of housing. We reject this claim, because the MRL exemption of mobile home parks is rationally related to the legitimate interest of promoting affordable housing for older persons.
 
 
 24
 The MRL creates a special benefit for older people in mobile home parks -the right to exclude young purchasers. By providing this benefit, California conceivably promotes the supply of mobile home parks for older persons. As discussed above with respect to older persons' housing in general, the exemption allows mobile homes to exist in more remote areas and be tailored towards the needs of older persons.
 
 
 25
 Mobile home parks offer several distinct characteristics that make such housing a particularly desirable option for many older people. In Schmidt v. Superior Court , 48 Cal.3d 370 (1989), the California Supreme Court relied upon the distinguishing features of mobile homes and upheld the MRL against equal protection challenge brought by young wouldbe purchasers wishing to live in an adults-only mobile home park.
 
 
 26
 Mobile home parks offer small units sitting on small lots, necessarily offering limited privacy and limited room for children. The Schmidt court also recognized "the greater expense that might have to be incurred in rendering such a park safe for children residents." Id. at 390. Additionally, mobile home parks are particularly adaptable to inexpensive land away from schools and major economic centers. The parks can be built on minimally improved land, without producing sufficient revenue to make them a viable occupant of more expensive real estate.
 
 
 27
 Furthermore, mobile homes as a class usually are less expensive than other types of housing, which makes them marketable to persons living on fixed incomes during, or in preparation for, retirement. According to Taylor's own submissions, a two-bedroom mobile home in the area around Santa Barbara sells for roughly $50,000, whereas a comparable two-bedroom condominium in the same area sells for roughly three times as much. Providing a special housing benefit to older persons is neither irrational nor illegitimate.
 
 
 28
 According to a survey taken shortly before passage of the FHAA, 72 percent of mobile home park residents in California were age 55 or older. See Cal. Dept. of Housing & Community Development, Mobilehome Parks in California: A Survey of Mobilehome Park Owners Pursuant to SB 1835 p. 31 (Feb. 1986); Schmidt, 48 Cal.3d at 390. Those demographics support the contention that mobile home parks offer distinguishing features making them particularly attractive to older people. California did not act arbitrarily or irrationally by giving disparate treatment to mobile home parks for older persons.
 
 III. CONCLUSION
 
 29
 We hold that the challenged legislative schemes do not deprive the plaintiff of equal protection under the laws, because the legislative schemes are rationally related to legitimate state interests. Thus, the plaintiff fails to state a constitutional claim upon which relief can be granted.
 
 
 30
 Accordingly, we AFFIRM.