83 P.3d 999 (2004)
150 Wash.2d 881
Carmen CAMPBELL, Appellant,
v.
STATE of Washington, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, Respondent.
Savannah Hurd, a minor, through her parents, Chris and Rosene Hurd, Respondent,
v.
State of Washington, Department of Social And Health Services, Appellant.
Nos. 74204-9, 74206-5.
Supreme Court of Washington, En Banc.
Argued November 19, 2003.
Decided January 29, 2004.
*1003 Rebecca Mary Coufal, Spokane, for Appellant.
Carl Perry Warring, Washington State Attorney General, Spokane, Christine Gregoire, Attorney General, Edward J. Dee, Tara Dee Blair, Olympia, for Respondent. *1000 *1001
*1002 MADSEN, J.
In these consolidated cases a number of challenges are made to the decisions of the Department of Social and Health Services, Division of Developmental Disabilities, that Carmen Campbell (Carmen) and Savannah Hurd (Savannah) are no longer eligible for Division of Developmental Disability (Department) services provided for persons with developmental disabilities. The child in each case was reevaluated upon reaching age six, as required by WAC 388-825-030, and the Department determined that the children's conditions are not developmental disabilities. Prior to age six, Department services are available to a child at risk of developmental disabilities as measured by developmental delays (as defined by WAC-388-825-030(6)(c)); after age six, a child is not entitled to Department services unless his or her condition falls within the definition of a developmental disability. In Carmen Campbell v. Department of Social & Health Services, No. 74204-9, the superior court upheld the determination of ineligibility. In Savannah Hurd v. Department of Social & Health Services, No. 74206-5, the superior court held that Savannah's equal protection rights were violated by application of RCW 71A.10.020 and WAC 388-825-030 because, the court reasoned, there is no rational basis for treating five year olds differently from six year olds.
We hold that the Department correctly determined that Carmen and Savannah no longer qualify for Department services, and that the superior court in Savannah Hurd v. Department of Social & Health Services erred in finding RCW 71A.10.020 and WAC 388-825-030 unconstitutional as applied. Accordingly, we affirm the superior court in Carmen Campbell and reverse the superior court in Savannah Hurd.

Facts

Carmen Campbell v. Department of Social & Health Services
On appeal to the Department of Social and Health Services (DSHS) Board of Appeals, the review judge modified the administrative law judge's (ALJ) findings of fact. None of the findings, as modified, have been challenged, and therefore they are verities on appeal. Postema v. Pollution Control Hr'gs Bd., 142 Wash.2d 68, 100, 11 P.3d 726 (2000); Hilltop Terrace Homeowner's Ass'n v. Island County, 126 Wash.2d 22, 30, 891 P.2d 29 (1995).
Carmen Campbell was born on June 14, 1994. She has been diagnosed with early onset kyphoscoliosis, also referred to as progressive scoliosis. After unsuccessful treatment at the Shriners Hospital in Spokane, Carmen was referred to Dr. Robert Campbell at CHRISTUS Santa Rosa Children's Hospital in San Antonio, Texas, a founder of the Titanium Rib Project. Due to significant costs anticipated with multiple surgeries, associated after-care, and travel, he would not treat Carmen unless she had insurance. Carmen's mother's insurance carrier initially declined to cover the costs because the treatment was experimental. The United States *1004 Food and Drug Administration (FDA) has since approved the Titanium Rib Project and there are over 100 children nationwide participating in the project at three sites San Antonio, Boston, and Philadelphia.[1]
Carmen's mother then applied to the Department for services for Carmen. Carmen was determined to be eligible because she had developmental delays and was under six. As a result, Carmen also became eligible for Community Alternative Program Services (CAP services), which allowed her to receive medical coupons (Medicaid) without regard to her mother's income. Carmen's mother's income is too high for Carmen to be eligible for supplemental security income (SSI) benefits.
Carmen had undergone 13 to 14 surgeries by the time of the administrative review, roughly twice a year, and is expected to need about two surgeries a year until her growth ceases. Carmen has also been diagnosed with thoracic insufficiency and asthma, both secondary to her progressive scoliosis, heart irregularities (not serious), some hearing loss, and vision problems. She attends a private school and is "age appropriate in her physical and academic development." Clerk's Papers (CP) (Findings of Fact 10) at 10.
Carmen's original eligibility for Department services and thus CAP services and the CAP waiver, was based upon being under six and suffering from developmental delay. Under DSHS rules, and RCW 71A.10.020, her continued eligibility depends upon her having a developmental disability as defined in the statute and in WAC 388-825-030 once she reached age six. In June 2001, the Department began the required review of Carmen's eligibility. On July 2, 2001, the Department advised her mother that Carmen's medical condition no longer qualified for Department services.
Carmen's mother filed a request for an administrative hearing. In the initial decision, the ALJ concluded that the Department had not reviewed sufficient medical information to deny eligibility and ordered the Department to continue eligibility. The Department filed a petition for administrative review. On October 26, 2001, the DSHS Board of Appeals issued its decision reversing the initial decision. On November 7, 2001, Carmen's mother filed a petition for review of the administrative decision in Spokane County Superior Court. The court determined that under RCW 71A.10.020(3) and WAC 388-825-030 the Board properly concluded that Carmen is not eligible for Department services and denied the petition.
Carmen's mother, on behalf of Carmen, appealed to the Court of Appeals pursuant to RCW 34.05.526. That court linked the case with Savannah Hurd v. Department of Social & Health Services and certified both cases to this court, which accepted certification and consolidated the cases.

Savannah Hurd v. Department of Social & Health Services
The ALJ's findings of fact in Savannah Hurd are unchallenged, and therefore are verities on appeal. Postema, 142 Wash.2d at 100, 11 P.3d 726; Hilltop Terrace Homeowner's Ass'n, 126 Wash.2d at 30.
At the time of the hearing, Savannah was a seven-year-old girl suffering from congenital scoliosis, kyphosis, and thoracic insufficiency syndrome. Congenital scoliosis is a lateral deviation from the normally straight line of the spine; kyphosis is an abnormally increased convexity in the curvature of the spine (hunchback); and thoracic insufficiency syndrome is the inability of the thorax to support normal respiration or lung growth, in Savannah's case secondary to progressive scoliosis. She also suffers from clubfoot, which has been partially resolved through surgery, and some nondisabling nerve damage to her left arm as a result of one of her surgeries.
*1005 Savannah was, like Carmen, admitted to Dr. Campbell's project and underwent the titanium rib procedure. At the time of the hearing, Savannah had undergone 14 surgeries and would require these surgeries until age 14 to 16 or until she ceases to grow. Her prognosis is good with continuing surgical treatment. Without the surgeries, she would probably not be alive or would "most certainly [be] a severe pulmonary crippled child, confined to a respirator." Admin. R. at 48 (letter from Dr. Melvin D. Smith, co-founder of the Titanium Rib Project). Savannah "is not cognitively impaired," and she is not enrolled in any special education classes. Admin. R. (Finding of Fact 6) at 3.
Savannah was found to be eligible for Department services under the same criteria as Carmenshe was under six and suffered from developmental delay; thus, she was also eligible for CAP services and the waiver of requirements for eligibility for medical benefits (Medicaid). Her mother's insurance pays for 80 percent of the medical expenses. Savannah's parents earn too much for her to qualify for SSI.
In June 2001, the Department initiated review of Savannah's eligibility for continued Department services and determined that she was no longer eligible. Savannah's parents appealed to the DSHS Board of Appeals. The review judge noted their concession that the ALJ's findings of fact were accurate and that the conclusions of law were legally correct,[2] and concluded that there was no basis to modify the Initial Decision.
Savannah's parents petitioned for review of the administrative decision in Spokane County Superior Court. The superior court reversed the Board of Appeals' decision. It entered findings stating that Savannah is, by "any dictionary definition," developmentally disabled and her disability, although orthopedic, will become neurological if untreated because of unavoidable impingement of the spinal cord. CP at 75 (Findings of Fact 2.11, 2.12). As explained below, these findings are irrelevant, as well as inaccurate. The superior court also held that RCW 71A.10.020(3) and WAC 388-825-030 are unconstitutional as applied to Savannah because "there is no rational basis for treating [a] five year old differently from six year olds in this case." CP at 75 (Conclusion of Law 3.4). The Department appealed. The Court of Appeals linked the case with Carmen Campbell v. Department of Social & Health Services and certified both to this court, which accepted certification and consolidated the cases.
Most of the issues raised are common to both cases, while one issue is not. We address the common issues first.

Analysis
Title 71A RCW governs the provision of services to individuals with developmental disabilities. Services may be provided to "eligible" individuals. RCW 71A.18.020. A person is eligible if DSHS "finds that the person has a developmental disability as defined in RCW 71A.10.020(2)." RCW 71A.16.020(1). Once a determination of eligibility for services is made, then "the secretary shall make a determination as to what services are appropriate for the person." RCW 71A.16.050. Thus, eligibility is determined before the need for services is considered. Among services that can be provided are early childhood intervention, health services, and equipment. RCW 71A.12.040(3), (8).
RCW 71A.10.020(3) provides:
"Developmental disability" means a disability attributable to mental retardation, cerebral palsy, epilepsy, autism, or another neurological or other condition of an individual found by the secretary to be closely related to mental retardation or to require treatment similar to that required for individuals with mental retardation, which disability originates before the individual attains age eighteen, which has continued or can be expected to continue indefinitely, *1006 and which constitutes a substantial handicap to the individual. By January 1, 1989, the department shall promulgate rules which define neurological or other conditions in a way that is not limited to intelligence quotient scores as the sole determinant of these conditions, and notify the legislature of this action.
(Emphasis added.)
DSHS adopted WAC 388-825-030, setting forth specific eligibility criteria. Among other things, WAC 388-825-030(6)(c) makes eligible a child under six who is "at risk of developmental disability" as evidenced by developmental delays in developmental areas, i.e., fine or gross motor skills, self-help skills, expressive and receptive communication skills, social skills, and cognitive, academic, or problem solving skills. The rule sets forth developmental delays that must be shown at each two-year interval from birth to age six, with increasing delays required to maintain eligibility as the child approaches age six.
Thus, under the rule, a child under six need not have a diagnosable developmental disability, but instead it must be established the child is at risk for a developmental disability as measured by developmental delay. The Department explains that these criteria for eligibility for children under six are necessary because a child's cognitive functioning is difficult to measure prior to age six. In addition, the Department says, eligibility under these criteria allows for early intervention to prevent, to the extent possible, the development of a lifelong developmental disability.
None of the criteria in WAC 388-825-030 are based upon medical conditions that do not involve cognitive or intellectual impairments, or some brain dysfunction.
The standard for review of administrative orders in adjudicative proceedings is found in RCW 34.05.570(3). In relevant part, an agency decision may be overturned if the court finds that the decision is unconstitutional, the agency interpreted or applied the law erroneously, or the agency acted arbitrarily or capriciously. The party challenging the administrative decision bears the burden of proving the invalidity of agency action. RCW 34.05.570(1)(a).

I.
Carmen's mother and Savannah's parents (hereafter claimants) argue that the Department has misinterpreted RCW 71A.10.020(3) when adopting the relevant criteria in WAC 388-825-030. They argue that their children's conditions are developmental disabilities within the meaning of RCW 71A.10.020(3) and that the Department has impermissibly narrowed the definition of developmental disability in WAC 388-825-030, thus unlawfully denying the children Department services. Essentially the claimants maintain that the rule exceeds delegated authority.
In order for an administrative rule to have the force of law, it must be promulgated pursuant to delegated authority. State v. Brown, 142 Wash.2d 57, 62, 11 P.3d 818 (2000). "[A]dministrative rules adopted pursuant to a legislative grant of authority are presumed to be valid and should be upheld on judicial review if they are reasonably consistent with the statute being implemented." Fahn v. Cowlitz County, 93 Wash.2d 368, 374, 610 P.2d 857, 621 P.2d 1293 (1980). However, an agency rule will be declared invalid if it exceeds the statutory authority of the agency. RCW 34.05.570(2)(c).
The legislature directed the Department in RCW 71A.10.020(3) to promulgate rules defining neurological or other conditions in a way that is not limited to intelligence quotient scores. RCW 71A.12.030 provides that the secretary "shall adopt rules ... to carry out [the purposes of] this title." RCW 71A.16.020(2) provides that "[t]he secretary may adopt rules further defining and implementing the criteria in the definition of `developmental disability'" in RCW 71A.10.020(3). RCW 71A.16.040(3) provides that "[t]he secretary may establish rules for the redetermination of eligibility for services under this title."
The Department adopted WAC 388-825-030, defining eligibility without sole reference to intelligence scores, and restricting eligibility to those conditions specifically listed in RCW 71A.10.020(3) and to "neurological *1007 or other condition[s] of an individual found by the secretary to be closely related to mental retardation or to require treatment similar to that required for individuals with mental retardation" as mandated by the statute. The first sections of WAC 388-825-030 contain specific definitions of mental retardation, cerebral palsy, epilepsy, and autism. Subsection (6)(c), at issue here, concerns children under six with developmental delays. The Department has defined developmental delays used to identify those children at risk for developmental disability.
The claimants maintain that the rule does not comport with the delegated authority because the language of RCW 71A.10.020(3) does not clearly restrict the Department's definition of developmental disabilities to the listed conditions and other cognitive or intellectual conditions like mental retardation. Instead, they urge, some terms are ambiguous in the statutory language "or another neurological or other condition of an individual found by the secretary to be closely related to mental retardation or to require treatment similar to that required for individuals with mental retardation." Id. In particular, they argue that "found by the secretary," "condition"[3] and "treatment" are ambiguous terms. The claimants reason that this ambiguity is resolved by express statements of legislative intent. In RCW 71A.10.015, the legislature recognized "the state's obligation to provide aid to persons with developmental disabilities through a uniform, coordinated system of services to enable them to achieve a greater measure of independence and fulfillment and to enjoy all rights and privileges" under the law. The claimants maintain that the legislature has expressed an expansive policy to encompass a wide range of developmental disabilities, and therefore the ambiguous terms should be construed in their favor to mean that disabling medical conditions should be classified as developmental disabilities.
The claimants additionally argue that the legislature's directive in RCW 71A.10.020(3) that the Department is not to base definitions solely on intelligence scores also shows that the legislature intended a departure from traditional limits in defining developmental disabilitiesbeyond the bounds of "outdated" medical terms, conditions, and treatments. This goal is not met, they urge, where the Department has adhered to "obsolete" language in defining developmental disabilities without regard to newly discovered medical conditions and treatment. They say that over time, "any rigid application of the eligibility requirements would necessarily be inequitable." Br. of Appellant (Carmen Campbell) at 10; Resp'ts' Br. (Savannah Hurd) at 16.
The claimants want the court to find the term "developmental disability" is intended to cover a broad range of conditions that include physical disabilities that are life threatening.
The extent of the authority granted to the Department depends upon the meaning of language in RCW 71A.10.020(3).[4] The meaning of a statute is a question of law that an appellate court reviews de novo. State v. J.M. 144 Wash.2d 472, 480, 28 P.3d 720 (2001). The court's goal is to determine the legislature's intent and carry it out. Id. If a statute's meaning is plain, then the court must give effect to the plain meaning as expressing what the legislature intended. Id.
Here, the claimants fail to recognize that all of the terms they claim are ambiguous are modified by other language that plainly limits additional qualifying conditions to neurological or other conditions that are similar to mental retardation or require similar treatment to that required for those with mental *1008 retardation. The statute clearly does not apply to medical conditions, here in particular orthopedic conditions, that do not involve cognitive or intellectual impairment like that of mental retardation. The statute's limitation on delegated authority to define developmental disability is clear.
With regard to RCW 71A.10.015, the legislature's manifest policy is to assist those with developmental disabilities to have the same full and productive lives as others. This goal is, however, necessarily dependent on the individual having a developmental disability in the first place. Thus, RCW 71A.10.015 does not show any intent contrary to the plain language in RCW 71A.10.020(3).
Finally, nothing in RCW 71A.10.020(3) limits diagnosis or treatment of developmental disabilities to obsolete methods. Instead, once a developmental disability is properly diagnosed, then appropriate services are identified. WAC 388-825-030 is clearly within the Department's delegated authority. With regard to subsection (6)(c) in particular, we note that the Department has not identified a developmental disability per se. However, this subsection nevertheless is within the delegated authority given the difficulty in identifying developmental disabilities at an early age, and the goal to limit emergence or worsening of developmental disabilities as a child grows older. The subsection is within the agency's delegated authority because it is "reasonably consistent with the statute being implemented." Fahn v. Cowlitz County, 93 Wash.2d 368, 374, 610 P.2d 857, 621 P.2d 1293 (1980).
The claimants' basic disagreement is with the legislature's fundamental policy choice to expend resources for individuals with cognitive or intellectual impairments. By the language used in RCW 71A.10.020(3), the legislature has narrowed the category of persons for whom Department services are to be provided. An agency has only the authority granted by statute. In re Electric Lightwave, Inc., 123 Wash.2d 530, 536, 869 P.2d 1045 (1994); Fahn, 93 Wash.2d at 374, 610 P.2d 857. The Department has no authority to expand the definition of developmental disability beyond what the legislature has permitted.
We conclude that WAC 388-825-030 is within the delegated authority of the Department as provided by the plain language of RCW 71A.10.020(3). A child under six may qualify for Department services without a diagnosis of a developmental disability, if that child is at risk of a developmental disability as measured by developmental delay. However, when the child reaches six and does not have cognitive or intellectual impairments like those of mental retardation or one of the specified conditions in RCW 71A.10.020(3), the individual does not continue to qualify for Department services.

II.
The claimants maintain that the court should hold that the state definition of developmental disability is preempted by federal law. As they point out, the federal definition of developmental disability for purposes of SSI benefits differs from the state definition because it includes a medically determinable physical impairment resulting in severe functional limitations and expected to end in death or last at least one year. 42 U.S.C. § 1382c(a)(3)(A). The second federal law relied on by the claimants is the Developmental Disabilities Assistance and Bill of Rights Act of 2000, which includes a grant program to fund state planning councils, a protection and advocacy system, university affiliated programs, and other programs of national significance. 42 U.S.C. § 15002(8). Part of this act defines developmental disability to include a physical impairment that results in substantial functional limitations. The claimants maintain that these federal laws preempt the state definition of developmental disability because federal funds are used to fund Department services.
The Department points out that the definition used for SSI eligibility does not apply in determining who is developmentally disabled for purposes of services from the Department. Participation in the State's developmentally disabled program may qualify an individual for programs that receive federal matching funds, such as the CAP waiver. Under WAC 388-825-180, these individuals *1009 must satisfy both the Department's criteria for developmental disability and the criteria in the Social Security Act, 42 U.S.C. § 1300. The Department also says that individual state's definitions of "developmental disability" do vary, and they must be approved by the federal government for purposes of the CAP services waiver which allows for receipt of Medicaid. The Department explains that the federal programs established in the Developmental Disabilities Assistance and Bill of Rights Act of 2000 do not involve direct services to people with developmental disabilities and do not place federal requirements on state services or eligibility criteria.
Congress may preempt local law by explicitly defining the extent to which its enactments preempt laws (express preemption). Preemption may also occur where the federal government intends to exclusively occupy a field (field preemption) and where it is impossible to comply with both state and federal law (conflict preemption). City of Seattle v. Burlington N. R.R. Co., 145 Wash.2d 661, 667, 41 P.3d 1169 (2002). There is a strong presumption against preemption. Stevedoring Servs. of Am., Inc. v. Eggert, 129 Wash.2d 17, 24, 914 P.2d 737 (1996).
The claimants maintain that conflict preemption is established because federal moneys are used for some Department services. This is insufficient. They have offered nothing to demonstrate an actual conflict, and they cite to no specific statutes, legislative history, or analysis to show any unavoidable conflict or any congressional intent to preempt.
The claimants have not established that federal law preempts the state definition of developmental disability.

III.
We next turn to the question whether Carmen and Savannah are eligible for Department services. This depends upon whether they are eligible under RCW 71A.10.020 and WAC 388-825-030.
Both children suffer from a form of progressive scoliosis that also involves kyphosis (hunchback). This is a medical condition that involves abnormal growth, with insufficient capacity for the lungs to grow and develop normally. If untreated, it can result in death or life on a respirator. However, neither child is cognitively or intellectually impaired, and neither suffers from mental retardation, cerebral palsy, epilepsy, or autism. Neither girl participates in special education. Carmen attends a private school and is age appropriate in her physical and academic development. Savannah attends public school. Both girls have additional conditions. Carmen has asthma, hearing and vision deficiencies, and heart irregularities (not serious). Savannah has clubfoot and some nerve damage as a result of one of the surgeries. It is not disputed that these are medical conditions that do not involve cognitive or intellectual impairment.
As noted, the superior court found in Savannah Hurd that Savannah has a developmental disability under any dictionary definition, and also found that her condition would involve neurological impairment in time if she does not have the necessary surgeries. The claimants rely on the second of these findings in arguing that Savannah has a developmental disability. However, the superior court did not take additional evidence, and its findings are irrelevant on this review of the administrative decision. Postema, 142 Wash.2d at 100 n. 10, 11 P.3d 726; US West Communications, Inc. v. Utils. & Transp. Comm'n, 134 Wash.2d 48, 72, 949 P.2d 1321 (1997) (in administrative hearings the facts are established at the administrative hearing; facts may be found by the superior court, i.e., the appellate level, only in limited circumstances); Waste Mgmt. of Seattle, Inc. v. Utils. & Transp. Comm'n, 123 Wash.2d 621, 633, 869 P.2d 1034 (1994) (court will continue to adhere to rule under prior Administrative Procedure Act, former chapter 34.04 RCW, that in reviewing adjudicative proceedings, review is of the administrative record without regard to the superior court's findings).
In addition, the findings are inaccurate. The first has no basis in Washington law. RCW 71A.10.020(3) controls, not a dictionary definition. As to the second, there is *1010 no medical evidence in the administrative record to support this finding.
Neither of the children has a developmental disability under state law, and thus they are no longer eligible for Department services.

IV.
The superior court in Savannah Hurd held that RCW 71A.10.020(3) and WAC 388-825-030 violate equal protection because there is no rational basis for disparate treatment of five and six year olds. The claimants urge in both cases that equal protection guarantees are violated in two ways first, because of the different definitions of developmental disability found in state and federal laws, and second, as the superior court in Savannah Hurd reasoned, because there is no basis to distinguish between five and six year olds in determining eligibility for Department services. The argument on the latter claim is primarily made in Savannah Hurd v. Department of Social & Health Services.
Regarding the first basis, the claimants offer no authority for the proposition that a state cannot define a condition differently from the federal government without violating equal protection. Claimants also urge that the court should analyze WAC 388-825-030 with strict scrutiny because the "fundamental right of life, liberty and property are at issue here." Br. of Appellant (Carmen Campbell) at 13; Resp'ts' Br. (Savannah Hurd) at 24. They fail, however, to offer authority for that proposition. In the absence of any meaningful argument or authority, we decline to address this contention.
With regard to whether the differing treatment of five and six year olds violates equal projection, this issue really concerns WAC 388-825-030 alone, since RCW 71A.10.020(3) does not make this distinction.
A classification based upon age is subject to rational basis review. Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 83, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000); Mass. Bd. of Ret. v. Murgia, 427 U.S. 307, 313-14, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976); Taylor v. Rancho Santa Barbara, 206 F.3d 932, 934 (9th Cir.2000). Under this standard, a regulation will survive a constitutional challenge if the legislation applies alike to all within the designated class, there are reasonable grounds to distinguish between those within and those without the class, and the classification bears a rational relationship to a legitimate government purpose. Willoughby v. Dep't of Labor & Indus., 147 Wash.2d 725, 739, 57 P.3d 611 (2002); DeYoung v. Providence Med. Ctr., 136 Wash.2d 136, 144, 960 P.2d 919 (1998).
Here, there is no question that all those under six are treated differently from those over six under WAC 388-825-030. However, all within the designated class under six are treated the same. There are also reasonable grounds to distinguish between those within and those without this class. The Department states that it is more difficult to assess cognitive abilities of young children, thus making a diagnosis of developmental disability more difficult than in older children. In addition, providing Department services to children under six who suffer from developmental delays can help prevent developmental disabilities or limit the extent of a disability. Also, children usually begin school at about age six, and school districts can provide appropriate intervention to address developmental delays at that age. Finally, the classification serves legitimate ends in assisting those at risk for developmental disabilities, measured by developmental delay, at a time when early intervention may help avoid or reduce the extent of developmental disabilities.
The claimants argue, though, that in neither girl's case was her condition difficult to diagnose and that neither has ever suffered from cognitive delays. Under minimum scrutiny, a classification must be upheld if there is any conceivable set of facts that could provide a rational basis for the classification. Heller v. Doe, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993). A classification does not fail because it is not made with mathematical nicety. 509 U.S. at 321, 113 S.Ct. 2637. An age classification is "presumptively rational." Kimel, 528 U.S. at 84, 120 S.Ct. 631. Where a statute imposes an age limitation to define a class, "`perfection *1011 is by no means required'" and such a statute may survive rational basis review even if it "is to some extent both underinclusive and overinclusive...." Vance v. Bradley, 440 U.S. 93, 108, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979) (quoting Phillips Chem. Co. v. Dumas Sch. Dist., 361 U.S. 376, 385, 80 S.Ct. 474, 4 L.Ed.2d 384 (1960)); see Taylor, 206 F.3d at 936 (even though the selection of a particular age "might be over and underinclusive on the margin, legislatures are given leeway under rational-basis review to engage in such line drawing"). This court has recognized the necessity for legislative line drawing where favorable legislation is enacted, observing that the line must be drawn somewhere. E.g., Davis v. Dep't of Licensing, 137 Wash.2d 957, 974-76, 977 P.2d 554 (1999); Griffin v. Eller, 130 Wash.2d 58, 66, 922 P.2d 788 (1996).
Thus, it makes no difference whether in an individual case it can be factually shown that a cut-off based upon age is not a good fit. Kimel, 528 U.S. at 84, 120 S.Ct. 631 ("a State may rely on age as a proxy for other qualities, abilities, or characteristics that are relevant to the State's legitimate interests"; "[t]hat age proves to be an inaccurate proxy in any individual case is irrelevant"). Indeed, the Court has said that "[o]ur Constitution permits States to draw lines on the basis of age when they have a rational basis for doing so at a class-based level, even if it `is probably not true' that those reasons are valid in the majority of cases." Kimel, 528 U.S. at 86, 120 S.Ct. 631 (emphasis added).
In light of established law pertaining to classifications based upon age, it is apparent that WAC 388-825-030(6)(c) withstands rational basis scrutiny, and we accordingly reverse the superior court's decision in Savannah Hurd that WAC 388-825-030 violates equal protection.

V.
In Carmen Campbell v. Department of Social & Health Services, the claimant maintains that the Department should be equitably estopped from "eliminating" Carmen's "right" to receive medical disbursements.[5] She argues that the Department acted to grant medical benefits to an ineligible applicant for a condition that the agency knew would last until physical maturity and then subsequently decided to discontinue benefits on the grounds that at age six Carmen was not eligible for benefits. She maintains that the earlier action is inconsistent with the later decision, and this provides the basis for equitable estoppel.
Equitable estoppel may apply where an admission, statement, or act has been detrimentally relied on by another party. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wash.2d 1, 19, 43 P.3d 4 (2002). Equitable estoppel against the government is not favored. 146 Wash.2d at 20, 43 P.3d 4; Kramarevcky v. Dep't of Soc. & Health Servs., 122 Wash.2d 738, 743, 863 P.2d 535 (1993). To establish equitable estoppel against the government, there must be proof by clear, cogent, and convincing evidence of an admission, act or statement that is inconsistent with a later claim, another party's reasonable reliance on the admission, act, or statement, and injury to the other party that would result if the first party is permitted to repudiate or contradict the earlier admission, act, or statement. Campbell & Gwinn, 146 Wash.2d at 20, 43 P.3d 4. The doctrine may not be asserted against the government unless it is necessary to prevent a manifest injustice and it must not impair the exercise of government functions. Id. Also, "[c]ourts should be most reluctant to find the government equitably estopped when public revenues are involved." Kramarevcky, 122 Wash.2d at 744, 863 P.2d 535.
Equitable estoppel does not apply here. First, the claimant misrepresents the case when she says that the Department provided services for an ineligible applicant, and later repudiated or contradicted that action. When Carmen was first determined to be eligible for Department services she was under six and did qualify under the special, more liberal criteria applicable to her age.
*1012 After she turned six, the Department then applied the general standards for eligibility, and determined she was no longer eligible for services because she was not developmentally disabled. Thus, there is no Department admission, act, or statement that is inconsistent with a later claim. Moreover, it cannot be fairly said that the Department offered services knowing that Carmen would not qualify after she reached age six because she was found to suffer from developmental delays as defined in WAC 388-825-030 and thus was found to be at risk for a future developmental disability or one that could be diagnosed in the future.
Second, the claimant has not established justifiable reliance. In testimony at the administrative hearing about Carmen's original acceptance into the project, Carmen's mother acknowledged that she "had been told that [Carmen] would be looked at again at age six." Admin. R. at 62. Moreover, if Carmen's mother believed that the initial eligibility decision meant that Carmen would remain eligible until she reached her adult growth, that understanding was also not justified under the law. "Where both parties can determine the law and have knowledge of the underlying facts, estoppel cannot lie." Lybbert, 141 Wash.2d at 35, 1 P.3d 1124.
The claimant also states that injury (Carmen's death) will result if Department services are discontinued. This statement is questionable because, as counsel informed the superior court in Savannah Hurd v. Department of Social & Health Services, and repeated in this court, the Shriners Hospital of Spokane now provides the treatment needed by both girls. Counsel informed the court during oral argument that the treatment also is or will soon be provided by a physician in Seattle. And, as explained, the record establishes that this treatment, once considered experimental and thus not covered by private insurance, is no longer considered experimental. During oral argument, counsel stated that both girls' medical care is presently covered by private insurance at 80 percent. We are unable to conclude, on this record, that ineligibility for Department services will lead to death as claimed. Importantly, with the CAP waiver that applied as a result of Carmen's eligibility for Department services pursuant to WAC 388-825-030, she received the benefit of funding for multiple surgeries that improved her physical condition. Rather than being worse off than she would have been if the Department had initially found her ineligible, as seems to be the argument, it appears to us, based on this record, that she is better off. Injury has not been established by clear, cogent, and convincing evidence.

Conclusion
The Department acted within its delegated authority when it adopted WAC 388-825-030. The claimants have not shown that the state law definition of developmentally disabled persons is preempted by federal law, nor that state law violates equal protection as applied in these cases. Under RCW 71A.10.020 and WAC 388-825-030, the Department correctly determined that Carmen and Savannah are no longer eligible for Department services. Finally, in Carmen's case, the elements of equitable estoppel have not been satisfied.
We affirm the superior court in Carmen Campbell v. Department of Social & Health Services and reverse the superior court in Savannah Hurd v. Department of Social & Health Services.
ALEXANDER, C.J., JOHNSON, IRELAND, BRIDGE, CHAMBERS, OWENS and FAIRHURST, JJ., concur.
NOTES
[1] In Savannah Hurd, counsel (the same attorney represents both Carmen and Savannah) advised the superior court that in September 2002 she had "received a [phone] call from Shriners Hospital in Spokane that at present the Shriners Hospital in Pennsylvania is now able to offer the surgery that both Carmen and Savannah receive... through Dr. Robert Campbell." Report of Proceedings at 3 (Dec. 13, 2002). The same attorney represented Carmen and Savannah in this court and made the same statement.
[2] On behalf of Savannah, her parents conceded on appeal to the DSHS Board of Appeals that "[t]he findings of fact in the initial decision are accurate." CP at 5. They also stated that "The Conclusions of Law are accurate in accordance with the present interpretation of the law. However, appellant disputes the ultimate finding that she is not eligible for DEPARTMENT services and thereby access to CAP services when the import of the statute underlying the quoted WAC's is considered." Id.
[3] In the opening brief in Carmen Campbell, the claimant says the term "medical condition" rather than "condition" is ambiguous. However, the term "medical condition" does not appear in the statute.
[4] The Department argues that its interpretation of the statute should be given weight. However, while a court may defer to an agency's interpretation of an ambiguous statute that it is charged to implement, the court does "not defer to an agency the power to determine the scope of its own authority." US West Communications, Inc. v. Utils. & Transp. Comm'n, 134 Wash.2d 48, 56, 949 P.2d 1321 (1997); In re Elec. Lightwave, Inc., 123 Wash.2d 530, 540, 869 P.2d 1045 (1994).
[5] DEPARTMENT services themselves do not involve medical care funding, but the CAP services waiver does.