Kaplan, Mitchell H., J.
INTRODUCTION
This case arises out of a subcontract between the plaintiff, Turner Construction Company (Turner), and the defendant MJ Flaherty Company (Flaherty). Turner was the general contractor on the construction of a 23-story commercial building at 157 Berkeley Street and certain related remodeling of an adjacent building for Liberty Mutual Insurance Company (the Project). Flaherty entered into a subcontract with Turner to perform the HVAC work on the Project (the Subcontract). The initial value of the Subcontract was $12,462,252. Turner brought this action against Flaherty to recover damages that it alleges that it suffered when Flaherty failed to complete its work on the Project and Turner had to hire another subcontractor to complete the HVAC work.[1]
Flaherty has asserted counterclaims against Turner. Some of these claims are based on Turner’s failure to pay Flaherty for all of the work that it performed. Here, the amount in dispute is complicated by the fact that in early 2013 several sub-subcontractors and material suppliers to Flaherty were not being paid and began to file notices of contract in anticipation of asserting mechanics’ liens on the Project. In response, Turner entered into a series of agreements with Flaherty pursuant to which it issued checks to Flaherty for subcontracted work that were made jointly payable to Flaherty and the vendors to insure that they were being paid out of the sums Turner was disbursing to Flaherty.
Flaherty, however, also has alleged that as a result of the manner in which Turner ran the Project, Flaherty was so adversely affected that the value of Flaherty as a going concern was adversely impacted and this resulted in a $6.4 million reduction in Flaherty’s “new worth.” This is, of course, a paradigm claim for consequential damages. This claim is the subject of the motion now before the court.
It would be an extraordinary understatement to say that this case has a tortured procedural history. Turner has filed two previous motions for summary *172 judgment that the court was unable to decide on their merits because they were premature or otherwise not properly before the court. It is treating this motion as a motion for partial summary judgment seeking dismissal of so much of the counterclaims as assert claims for consequential damages, and, to that extent, Turner’s motion for summary judgment is ALLOWED.
ADDITIONAL FACTS
There are only a few additional facts that need be recited in connection with Flaherty’s claim for consequential damages.
As is typical of subcontracts for large, commercial building projects, the Subcontract contained a clause eliminating Flaherty’s right to recover consequential damages.
Notwithstanding any term or provision herein to the contrary, Subcontractor expressly waives and releases all claims or rights to recover lost profit (except for profit on work actually performed), recovery of overhead (including home office overhead), and any other indirect damages, costs or expenses in any way arising out of or related to the Agreement, including the breach thereof by Contractor, delays, charges, acceleration, loss of efficiency or productivity disruptions and interference with the performance of the work.
A number of change orders were issued for the HVAC work which increased the project price by something in excess of 20%. Flaherty asserts, and for purposes of this motion it is accepted as true, that Turner’s project schedule was very aggressive. Additionally, changes to the schedule and project sequencing “negatively impacted . . . Flaherty’s manner and method of performance and this increased Flaherty’s costs” and made the project much more difficult for Flaherty to perform.
DISCUSSION Summary Judgment
Flaherty contends that the project changes were cumulatively of such a scope and consequence that they caused “a Cardinal Change or Abandonment of the [Subcontract].” As will be seen, whether a question of fact exists concerning whether Turner caused a cardinal change in the Subcontract, or the Subcontract was abandoned, need not be decided to conclude that the limitation on consequential damages set out in the Subcontract continues to be binding on Flaherty.
At oral argument, the court noted that, before this case, it had never encountered the concept of cardinal change in a contract, and the few cases that Flaherty cited in support of this doctrine were federal government contracting cases. The court questioned whether the doctrine would be applied by Massachusetts courts to private contracts. In a post-hearing supplemental brief Flaherty directed the court to Superior Court Judge Lloyd MacDonald’s (now retired) excellent and comprehensive decision: Certified Power Systems, Inc. v. Dominion Energy Brayton Point, LLC, 2012 WL 384600 (Jan. 3, 2012). In that case, J. MacDonald described this doctrine as follows:
The Court was unable to find a Massachusetts case that referred directly to the cardinal change doctrine. However, it is referred to by commentators on Massachusetts law and the concept embodies familiar contract principals.
A cardinal change is a change outside the general scope of the contract which constitutes such a substantial deviation that it alters the nature of the bargain and constitutes a material breach . . . (cardinal change is drastic and fundamental modification in the work which requires contractor to perform duties materially different from those originally bargained for).
Although a cardinal change generally represents a large increase in one parly’s contract burdens, there is no precise formula for determining whether a change is within the scope of the contract or a cardinal change . .. Each case must be analyzed on its own facts and circumstances giving fair consideration to the magnitude and qualify of the changes ordered and their cumulative effect on the project as a whole . . . Numerous changes, none of which individually may be deemed cardinal, may create a cardinal change when considered as a whole.
(Internal citations and quotations omitted for simplicity.) This court finds this reasoning persuasive and concludes that, under Massachusetts law, the cardinal change doctrine may be applied to a private construction contract when the facts warrant it. It is, however, worth noting that, in Certified Power Systems, Inc., Judge MacDonald concluded that change orders that increased the subcontract price by more than 50% did not constitute a cardinal change: “the enlarged work crew, the insistence on substantial overtime as a means to recover schedule and the winter conditions together presented a markedly different contract environment from what CPS reasonably anticipated. However, the essence of the work required by the Subcontract remained the same. Further, the change order procedure of the Subcontract provided a structure for the orderly accommodation of the altered conditions without undue disruption.”
It seems likely that Judge MacDonald’s conclusions will apply to the present case as well, but the court’s decision on consequential damages does not rest on that factual conclusion. As Judge MacDonald notes, if a cardinal change were established that might constitute a material breach of the Subcontract. However, proof of a breach of contract on the part of Turner would not be a basis for the court to write a new subcontract for the parties that did not include any limitation on consequential damages. Proof of a cardinal change constituting a breach would permit recovery of direct damages occasioned by that breach.
*173 Indeed, none of the cases that Flaherty has submitted that mention cardinal change or contract abandonment, touch on the issue of consequential damages or even suggest a theory that would support a contract based claim (or any other claim) for consequential damages.
Flaherty submitted to the court copies of several cases that address the concepts of cardinal change or contract abandonment without any analysis of how these cases apply to its version of the facts underlying its dispute with Turner. The cases that seem closest to the issue presented by the instant case are those in which the court concluded that the contracting parties had departed so significantly from the terms of their contract that the plaintiff was entitled to recover the fair value of its services instead of under the contract, i.e., a quantum meruit recovery.
For example, in J.J. Jones Const. Co. v. Lehrer McGovern Bovis, Inc., 83 P.3d 1009 (Nev. 2004), the court considered the claims of a subcontractor asserted under theories of abandonment and cardinal change, applying Nevada law. “Generally, contract abandonment occurs when both parties depart from the terms of the contract by mutual consent. The consent may be express, or it may be implied by the parties’ actions, such as when the acts of one party inconsistent with the contract’s existence are acquiesced in by the other.”[2] Id. at 1019-20 (internal citations and quotations omitted). The Nevada court then went on to consider the cardinal change doctrine. It commented that although this doctrine was generally applied only in government contracting cases, it would be recognized under state law. “[A] cardinal change occurs when the work is so drastically altered that the contractor effectively performs duties that are materially different from those for which the contractor originally bargained. The contractor must prove facts with specificity that support its allegations that a cardinal change occurred.” Id. (internal citations and quotations omitted). The court went on to note that “the evidence required to demonstrate the occurrence of cardinal change is similar to that required by the contract-abandonment theory.” Id. at 1021. It then concluded that, under either theory, the measure of recovery for the subcontractor was the true value of the services performed, i.e., quantum meruit. See also O’Brien & Gere Technical Services, Inc. v. Fru-Con/Fluor Daniel Joint Venture, 380 F.3d 447 (8th Cir. 2004) (applying a theory of abandonment under Missouri law and allowing recovery for the reasonable value of the services performed); C. Norman Peterson Co. v. Container Corp. of Am., 172 Cal.App.3d 628 (1985) (finding evidence sufficient to establish abandonment of contract under California law and permitting recovery of the reasonable value of services on a quantum meruit basis).
None of this group of cases provides support for a claim for indirect, consequential damages under a theory of cardinal change or contact abandonment.[3] Rather, they apply traditional concepts of equitable relief to situations in which a contract should be set aside because the work performed was different than the work bargained for under the contract. In each case, the court concludes that the party performing the work should be given the opportunity to recover the fair value of its labors. The same concepts apply under Massachusetts law. See, e.g., Bosewell v. Zephyr Lines, Inc., 414 Mass. 241, 250 (1993).
To the contrary, under Massachusetts law, clauses in construction contracts limiting the right to recover consequential damages have long been recognized and enforced as an appropriate means to “limit the expense and unpredictability of construction contract litigation.” Costa v. Brait Builders Corp., 463 Mass. 65, 78 n.22 (2004). Indeed, the SJC has reflected on the utility of such clauses as a means to protect against claims just like those that Flaherty attempts to assert in this case: “Some of the consequential damages claimed by the plaintiff here, including his going out of business . . . may provide a case in point.” Id.
In consequence, Flaherty’s claims for indirect or consequential damage fail, as a matter of law, even if there is evidence to support a theory of cardinal change or contract abandonment in the summary judgment record.
Motion to Strike Expert Testimony
Because the single issue actually before the court on the motion for summary judgment does not turn on whether there is evidence in the summary judgment record that would support claims of cardinal change, the court need not address Turner’s motion to strike the John Grant Report. However, a few comments on the report may prove useful as the parties prepare for trial.
In his report, Grant offers the opinion: “When all of the above Project Information, Circumstances, and Events are considered as a whole, it is JCCMI’s fair and reasonable professional conclusion that there was a Cardinal Change in Flaherty’s Scope of Work and accordingly an Abandonment of the Contract.” That is not an opinion that an expert may render in this case. His opinion offers a conclusion on a mixed question of law and fact to be addressed by a court or, perhaps, a jury on proper instructions on the law. Grant may have expert testimony that would be useful for a factfinder in making that decision, but that will be determined by the trial judge on pretrial motions or during trial.
Moreover, at present, the court does not believe that the issue of cardinal change, much less contract abandonment, can be presented without testimony from witnesses who performed or observed the work being done by Flaherty and can provide competent evidence of the effect that Project changes had on Flaherty, if they had any at all. Having reviewed, as *174 best it can, the Grant Report, the court finds many of the opinions expressed to be in the nature of a description of how the changes might have affected Flaherty. Perhaps, some of what Grant has to say might serve as corroboration of testimony from percipient witnesses concerning how the changes actually affected Flaherty’s work on the Project. Again, the admissibility of any of the opinions expressed in the Report, and whether the report is sufficient to prove cardinal change without a percipient witness, are matters for the trial judge to decide.
ORDER
For the foregoing reasons, Turner’s motion for Summary Judgment is ALLOWED to the following extent: Flaherty's counterclaims for consequential or indirect damages are dismissed. The court makes no ruling on Turner’s Motion to Strike the Expert Report of Jack Grant. This is without prejudice to Turner’s right to file pretrial motions concerning the admissibility of testimony based on the Report or to object to such testimony at trial.

 Turner’s complaint also includes allegations concerning subcontracts that Turner entered into with Flaherty on two other projects, a new building at University of Massachusetts at Lowell and a Liberty Mutual Conference Center. Turner alleges that Flaherty also failed to complete these projects causing it damage; however, the focus of this litigation appears to be the 157 Berkeley Project. It seems that Flaherty is no longer in business.

 The court does not see any evidence of contract abandonment in this case, as it appears that Turner and Flaherty continued to make use of the change order process until Flaherty stopped working. However, the state of the summaiy judgment record is such that the court cannot reach that conclusion as a matter of law.

 Many of the cardinal change cases to which Flaherty has directed the court are completed inapposite. These are cases in which the plaintiff is a disappointed bidder for a publicly bid contract and argues that under the cardinal change doctrine, the contract was so amended after it was awarded that it is a different contract that the plaintiff was never given the opportunity to bid on. See, e.g., Cardinal Maint. Serv. v. United States, 63 Fed.Cl. 98 (2004) (determining that a series of changes amounted to a cardinal change and therefore a violation of public bidding laws).