[No. 31320-1-II.   Division Two.   April 12, 2005.]

MARILYN GREENEN, *Appellant*, v. THE BOARD OF ACCOUNTANCY, *Respondent*.

*James J. Rigos*, for appellant.

*Robert M. McKenna, Attorney General*, and *Diane L. Mc-Daniel, Assistant*, for respondent.

¶1 VAN DEREN, J. — Marilyn Greenen appeals the Washington State Board of Accountancy's (Board) final order disciplining her for misrepresentations on health insurance forms while employed at a state agency as an account manager and licensed Certified Public Accountant (CPA). Greenen argues that the Board lacked jurisdiction to discipline her under former RCW 18.04.295(2) (1992) and former WAC 4-25-910(2)(a)(ii)-(iii) (1994). Because former RCW 18.04.295(2)'s plain language, statutory scheme, and legislative intent provide the Board authority to discipline Greenen under the specific facts here and she fails to demonstrate that the Board's final order was arbitrary or capricious, we affirm.

## FACTS

A. Background

¶2 In October 1993, Greenen began working at the Port of Vancouver (Port) as an account manager. She was a licensed CPA at all times during her employment with the Port. Before working at the Port, she worked for three years at the Washington State Auditor's Office. Greenen was not directly engaged in public accounting in her account manager position at the Port; however, she oversaw the preparation of financial statements and supervised employees with accounting duties.

¶3 When she started working at the Port, Greenen was married but had recently filed a dissolution petition and she had one dependent child. Because the Port is a state agency, Greenen could obtain health insurance benefits for her husband and child through the state's medical plan. Greenen received the Port's employee benefits booklet that explained eligibility rules for dependents and a copy of the Port's policy on insurance benefits that stated, "[e]mployees are responsible for notifying the Port on approved enrollment forms of their eligible dependents. Any extra costs associated with a lack of notification shall be the employee's responsibility." Administrative Record/Clerk's Papers (AR/CP) at 709.

¶4 Her marriage was dissolved in November 1993, about five weeks after she enrolled her husband for health insurance benefits under the state medical plan.[1] Nothing in Greenen's dissolution decree required her to provide health insurance to her former spouse. For over four and a half years, Greenen failed to notify the Port of her change in marital status and she did not update her health insurance information.

¶5 Then, in May 1998, her supervisor confronted her about the marriage dissolution. Her supervisor required her to submit an updated health insurance form to remove

---

[1] Greenen's dissolution decree was amended, nunc pro tunc, in March 1994.

her former spouse's eligibility for medical benefits and to provide the date of her divorce. Greenen submitted an incomplete form that identified her as single but failed to provide the date of her divorce decree. Greenen's revised form also stated "delete spouse effective . . . May 31, 1998," because this information was "[n]o longer applicable." AR/CP at 684. When the form was returned for lack of a required dissolution date, Greenen indicated that she would take care of it; however, the Port did not receive a properly updated health insurance form.

¶6 About one year later, in April 1999, the Port again asked Greenen to submit an updated health insurance form because the state continued to incur costs for her former spouse's medical coverage. Greenen submitted another inaccurate form that asserted the date of her former spouse's ineligibility was May 31, 1998, because of an "agreement to cover ex-spouse expired as of 5/31/98." AR/CP at 685. Soon after, the Port terminated Greenen's employment with a mutual release of all claims. The Port paid approximately $4,500 in additional premiums for the unauthorized medical coverage of Greenen's former spouse. Greenen eventually reimbursed the Port for this amount.

B. Procedural History

¶7 The Board filed a Statement of Charges against Greenen in September 2000, alleging six violations under the Public Accountancy Act (Act), former chapter 18.04 RCW (1992),[2] and related provisions of the WAC. The Board held a hearing that included the testimony of Greenen and two additional witnesses.

¶8 In November 2002, the Board issued a final order that exonerated Greenen of four charges, but disciplined her under former RCW 18.04.295(2)[3] and former WAC 4-25-

[2] Laws of 1992, ch. 103, § 11.

[3] Former RCW 18.04.295 (1992) provides in relevant part:

The board of accountancy *shall* have the power to revoke, suspend [or] refuse to renew a certificate or license, and may impose a fine in an amount *not to exceed*

-910(2)(a)(ii)-(iii)[4] for fiscal dishonesty and misleading representations while representing herself as a CPA. The Board's final order required Greenen to take a CPA ethics exam, to take an ethics course, and to pay a fine of $1,000 and 80 percent of the Board's investigative and legal costs.

¶9 Greenen moved for reconsideration, which the Board denied. Greenen filed a petition for review of the Board's final order in Thurston County Superior Court. The court affirmed the Board's final order and denied Greenen's motion for reconsideration.

## ANALYSIS

### I. STANDARD OF REVIEW

¶10 We review a final agency order under RCW 34.05.570(3). The party challenging an agency's action must prove the decision's invalidity and our review is limited to the record before the agency. RCW 34-.05.570(1)(a), .558; *Port of Seattle v. Pollution Control Hearings Bd.*, 151 Wn.2d 568, 587, 90 P.3d 659 (2004). We may grant relief to the petitioner based on an agency's erroneous interpretation of the law or an agency decision

---

one thousand dollars plus the board's investigative and legal costs in bringing charges against a certified public accountant . . . *for any of the following causes*:

. . . .

(2) Dishonesty, fraud, or negligence while representing oneself as a CPA.

(Emphasis added.) Additionally, in 2000, the legislature removed the brackets surrounding the "or" in former RCW 18.04.295. LAWS OF 2000, ch. 171, § 1. But the record demonstrates that the Board applied former RCW 18.04.295(2) (1992).

[4] Former WAC 4-25-910 provides in relevant part:

RCW 18.04.295 specifies sanctions the board may impose based on a listing of general causes. The following specific acts are examples of prohibited activities that constitute grounds for discipline under RCW 18.04.295. *The board does not intend this listing to be all inclusive.*

. . . .

(2)(a) Dishonesty, fraud, or negligence while representing oneself as a CPA, *within the meaning of 18.04.295(2)*, includes but is not limited to:

. . . .

(ii) Making misleading, deceptive, or untrue representations;

(iii) Engaging in acts of fiscal dishonesty.

(Emphasis added.)

that is arbitrary or capricious. *Pub. Util. Dist. No. 1 of Pend Oreille County v. Dep't of Ecology*, 146 Wn.2d 778, 790, 51 P.3d 744 (2002).

¶11 We review a challenge to an agency's statutory interpretation and legal conclusions de novo under the error of law standard. *Bond v. Dep't of Soc. & Health Servs.*, 111 Wn. App. 566, 571-72, 45 P.3d 1087 (2002). Regarding "an ambiguous statute which falls within the agency's expertise, the agency's interpretation of the statute is accorded great weight, provided it does not conflict with the statute." *Pub. Util. Dist. No. 1*, 146 Wn.2d at 790. But we do not defer to an agency's determination of its scope of authority. *Campbell v. Dep't of Soc. & Health Servs.*, 150 Wn.2d 881, 894 n.4, 83 P.3d 999 (2004).

¶12 We evaluate a statute's plain language to determine legislative intent. *Campbell*, 150 Wn.2d at 894. If the plain language is ambiguous, we may review the statute's legislative history, including legislative bill reports, to help determine a statute's intent. *Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 11-12, 43 P.3d 4 (2002); *Brown v. City of Yakima*, 116 Wn.2d 556, 562, 807 P.2d 353 (1991). We examine the statute as a whole and our statutory interpretation must not create an absurd result. *Pub. Util. Dist. No. 1*, 146 Wn.2d at 791; *Strain v. W. Travel, Inc.*, 117 Wn. App. 251, 254, 70 P.3d 158 (2003), *review denied*, 150 Wn.2d 1029 (2004).

¶13 An agency order is arbitrary or capricious "if it is willful, unreasoning, and issued without regard to or consideration of the surrounding facts and circumstances." *Manke Lumber Co. v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 113 Wn. App. 615, 623, 53 P.3d 1011 (2002), *review denied*, 148 Wn.2d 1017 (2003). The party challenging an agency order " 'carries a heavy burden' " to persuade an appellate court that the agency decision is erroneous. *In re Disciplinary Proceeding Against Brown*, 94 Wn. App. 7, 16, 972 P.2d 101 (1999) (quoting *Keene v. Bd. of Accountancy*, 77 Wn. App. 849, 859, 894 P.2d 582 (1995)). If the appellant does not assign error to the agency's findings of

fact in the final order, these facts are verities on appeal. *Tapper v. Employment Sec. Dep't,* 122 Wn.2d 397, 407, 858 P.2d 494 (1993).

## II. Board's Jurisdiction to Discipline a Licensed CPA Under Former RCW 18.04.295(2)

¶14 Greenen contends that the Board lacked jurisdiction to discipline her for misrepresenting her former spouse's eligibility for medical insurance while she was a licensed CPA and working as an account manager at the Port. Greenen interprets former RCW 18.04.295(2)'s phrase "representing oneself as a CPA" to require that the Board's charge involve misconduct solely in the practice of public accounting.[5] The Board responds that it properly exercised its authority to discipline Greenen given the specific facts here and former RCW 18.04.295(2)'s plain language and legislative history.

### A. Former RCW 18.04.295(2) and Former WAC 4-25--910(2)(a)(ii)-(iii)

¶15 Because Greenen's argument focuses on statutory interpretation, we first evaluate former RCW 18.04.295(2)'s plain language and statutory scheme. *Campbell,* 150 Wn.2d at 894; *Pub. Util. Dist. No. 1,* 146 Wn.2d at 791. And former WAC 4-25-910(2)(a)(ii)-(iii) must be reasonably consistent with the Act and former RCW 18.04.295(2). *Campbell,* 150 Wn.2d at 892.

---

[5] The record shows that the Board provided Greenen adequate time to present her jurisdictional arguments at her hearing. Greenen also contends that the Board's proceedings were biased and violated her due process rights, such as the right to a fair hearing. But she fails to preserve this issue for our review. Greenen's briefs submitted to both this court and the superior court focus on her challenge to the Board's jurisdiction. *See, e.g.,* Br. of Appellant at 32 ("While there was [procedural] error below in this area, the Board's total lack of jurisdiction makes it unnecessary to now address this issue."). Further, these briefs fail to provide both citations to the record and legal authority in support of her allegations of procedural improprieties. And her appellate brief relies exclusively on conclusory assertions of a biased tribunal and proceedings. Accordingly, we do not review this argument. RAP 10.3(a)(5) (appellant's argument should contain "citations to legal authority and references to relevant parts of the record."); *State v. Dennison,* 115 Wn.2d 609, 629, 801 P.2d 193 (1990); *see also Clausing v. State,* 90 Wn. App. 863, 878 n.8, 955 P.2d 394 (1998).

■ ¶16 The Act's statutory scheme provides the Board jurisdiction on numerous issues related to holders of a CPA license or certificate. One purpose of the Act is to "protect the public interest" by "*assess*[ing] the qualifications" of both CPAs and "certificate holders who are *not* licensed for the practice of public accounting." Former RCW 18.04.015(1)(b)(ii) (1992) (emphasis added). The Act provides the Board with broad authority to promulgate rules in the WAC to assist the Board in performing its responsibilities. Former RCW 18.04.055(11) (1992); *see also* former RCW 18.04.055(4). The Board has jurisdiction to establish the requirements for CPA licensure and certification; the power to issue, revoke, and reinstate a CPA license or certificate; and the power to revoke, suspend, or refuse to renew a CPA certificate or license and impose fines for a variety of independent reasons. Former RCW 18.04.105 (1999); former RCW 18.04.195 (1999); former RCW 18-.04.295; former RCW 18.04.335 (1997).

¶17 Former RCW 18.04.295 identifies a variety of separate and independent reasons for discipline that do not require the practice of public accounting. Examples include: (1) criminal behavior, defined as "[c]onviction of a crime or an act constituting a crime"; (2) the cancellation or suspension of the right to practice as a CPA in another state "for any cause" other than failure to pay fees or meet continuing education requirements; and (3) failure to cooperate with the Board's disciplinary investigation. Former RCW 18-.04.295(5), (6), (9). Greenen urges that the Board's charge under former RCW 18.04.295(2) is the same as the Board's charge under former RCW 18.04.295(4) for a violation of the professional conduct rules. But Greenen ignores that former RCW 18.04.295 sets forth different types of misconduct that operate independently of one another. And former RCW 18.04.025(5) (1999) expressly defines the practice of public accounting; however, former RCW 18.04.295(2) does not employ this definition.

¶18 Thus, given the Act's plain language and statutory scheme, former RCW 18.04.295(2) provides the Board ju-

risdiction to discipline Greenen if she is found guilty of dishonesty, fraud, or negligence while representing herself as a CPA. And former WAC 4-25-910(2)(a)(ii)-(iii)'s plain language is reasonably consistent with former RCW 18-.04.295(2). But because the Act does not expressly define the phrase "representing oneself" employed by former RCW 18.04.295(2), and this phrase is arguably subject to more than one interpretation, we further examine the Act's legislative history to determine the legislature's intent of this phrase.

B. Interpretation of "representing oneself as a CPA" under former RCW 18.04.295(2)

¶19 Greenen asserts that former RCW 18.04.295(2) limits the Board's disciplinary authority to a CPA's misconduct occurring solely in the practice of public accounting. But Greenen does not persuasively distinguish the Act's legislative history that undermines her argument.

¶20 In 1992, the legislature extensively revised the Act and former RCW 18.04.295 to broaden the Board's authority to discipline a CPA. LAWS OF 1992, ch. 103, §§ 1, 2, 5, 11. Former RCW 18.04.295 's revisions authorized the Board to evaluate a CPA's certificate, not just a CPA license, and impose financial penalties for violating the variety of independent reasons set forth under this provision. LAWS OF 1992, ch. 103, § 11.

¶21 The legislature also affirmatively changed the circumstances of dishonest or negligent conduct subject to the Board's discipline under former RCW 18.04.295(2). LAWS OF 1992, ch. 103, § 11. The legislature's 1992 amendments *omitted* the phrase "in the practice of public accounting" from former RCW 18.04.295(2) and *added* "while representing oneself as a CPA." LAWS OF 1992, ch. 103, § 11. Further, the 1992 legislature modified the Act's definition of the "practice of public accounting" and, thus, the legislature was aware of this definition when it intentionally omitted it from former RCW 18.04.295(2). LAWS OF 1992, ch. 103, § 2.

¶22 Consistent with the legislature's 1992 revisions to the Act and former RCW 18.04.295(2), the Final Legislative Report of the session clarified the legislature's intent to broaden the Board's discipline authority. *See* 1992 FINAL LEGISLATIVE REPORT, 52nd Leg., Reg. Sess., at 19 (Wash.) ("The *board's authority* to conduct reviews and investigations and to *discipline CPA's [sic] is expanded.*") (emphasis added). Former RCW 18.04.295 reflects this broad authority to discipline CPAs. *See* former RCW 18.04.295 (authorizing the Board to impose discipline "of *any* certified public accountant for *any* of the following causes") (emphasis added). And the Board's administrative rule is consistent with former RCW 18.04.295. *See* former WAC 4-25-910 ("The following specific acts are examples of prohibited activities that constitute grounds for discipline under RCW 18.04.295. The board does *not intend this listing to be all inclusive.*") (emphasis added).

¶23 Greenen fails to persuasively respond to the Act's legislative history that expressly omits the "in the practice of public accounting" definition from former RCW 18.04.295(2). Instead, Greenen urges us to adopt interpretations of statutes from foreign jurisdictions that appear to employ the "in the practice of public accounting" language expressly rejected by our legislature. And Greenen does not discuss how her list of foreign statutes are applied in the context of their state's regulatory systems.

¶24 Greenen also argues that "representing oneself" is akin to the Act's definition of "holding out" that involves a person's public and affirmative offer to perform public accounting. But the legislature did not employ this specific definition under former RCW 18.04.295(2). And the definition of "holding out" is irrelevant because it involves a person's false portrayal of holding a valid CPA license or certificate. Former RCW 18.04.025(15). Here, it is undisputed that Greenen held a valid CPA license at all relevant times.

¶25 Considering the legislative history, statutory scheme, and plain language of the Act and former RCW

18.04.295, we hold that former RCW 18.04.295(2) and former WAC 4-25-910(2)(a)(ii)-(iii) provide the Board jurisdiction to discipline a person for dishonesty, fraud, or negligence while having a valid CPA license or certificate. We emphasize that our holding is narrow and that the Board's charge under former RCW 18.04.295(2) is inherently a highly fact specific inquiry.

¶26 We also note that our statutory analysis reaches the same result under the 2001 revisions of the Act that do not apply to Greenen's charges, but further expand the Board's disciplinary authority under RCW 18.04.295(2). LAWS OF 2001, ch. 294, § 14. Thus, our holding advances our legislature's purpose for the Act. *Thurston County v. City of Olympia*, 151 Wn.2d 171, 175, 86 P.3d 151 (2004).

¶27 Currently, RCW 18.04.295(2) clearly provides the Board jurisdiction over dishonest conduct by persons *not* performing public accounting. *See* RCW 18.04.295(2) (providing the Board disciplinary authority for "[d]ishonesty, fraud, or negligence while representing oneself as a nonlicensee owner holding an ownership interest in a licensed firm, a licensee, *or a certificate holder*.") (emphasis added); RCW 18.04.025(2) (" 'Certificate holder' means the holder of a certificate as a certified public accountant who has not become a licensee, has maintained CPE requirements, and *who does not practice public accounting*." (emphasis added)); RCW 18.04.025(3) (" 'Certified public accountant' or 'CPA' means a person holding a certified public accountant license or certificate."). Consistent with both our holding and RCW 18.04.295(2)'s plain language, the Board currently defines "representing oneself" as "[*f*]*or the purposes* of RCW 18.04.295(2) and WAC 4-25-910[2], means *having* a license, practice privilege, certificate or registration *that entitles the holder to use the title* 'CPA.' " WAC 4-25-410(39) (emphasis added). And the legislature has twice modified the Act without changing RCW 18-.04.295(2). LAWS OF 2004, ch. 159, § 4; LAWS OF 2003, ch. 290, § 3.

III. GREENEN'S CONDUCT AND THE BOARD'S DECISION

██ ¶28 Because we hold that the Board had jurisdiction to discipline Greenen under former RCW 18.04.295(2) and former WAC 4-25-910(2)(a)(ii)-(iii), we examine the Board's application of the Act to the unique facts here. Greenen does not challenge the Board's factual findings in the final order, thus these factual findings are verities on appeal. *Tapper*, 122 Wn.2d at 407. Consequently, Greenen must demonstrate that the Board's final decision was unreasonable and failed to consider the surrounding circumstances. *Manke Lumber Co.*, 113 Wn. App. at 623. And given our holding, we accord great weight to the Board's interpretation of former RCW 18.04.295(2) and former WAC 4-25-910(2)(a)(ii)-(iii). *Pub. Util. Dist. No. 1*, 146 Wn.2d at 790.

█ ¶29 The Board's findings state that Greenen was a licensed CPA and employed as an account manager at the Port at all material times. The Board found that, "[b]ased on [Greenen's] admissions alone ... [Greenen] misrepresented her marital status and eligibility for health care benefits." AR/CP at 782. The Board's findings establish three primary reasons for disciplining her under former RCW 18.04.295(2) and former WAC 4-25-910(2)(a)(ii)-(iii).

¶30 First, Greenen failed to "affirmatively notify the Health Care Authority of her divorce in 1993." AR/CP at 782. Second, despite the Port's specific request in 1998 to update her health care benefits form, "she failed to fill in the date of [her] divorce, and she indicated 'delete spouse effective May 31, 1998;'" thus, her conduct "was misleading." AR/CP at 782. And finally, after the Port asked her again to resubmit updated forms regarding the eligibility of her former spouse in 1999, the Board stated, "[a]gain, [Greenen] misrepresented her marital status by indicating that the effective date of change was May 31, 1998," and that the reason for this change was an " 'agreement to cover ex-spouse [that] expired as of 5-31-98.' " AR/CP at 783.

¶31 Greenen asserts that her conduct consisted of inadvertent mistakes. But this mischaracterization ignores her fiscally dishonest and misleading conduct in failing to update her medical insurance forms as required by Port policy and twice misrepresenting her former spouse's eligibility for medical insurance after her employer discovered her deceit. Greenen asserts that she can escape the Board's discipline because she repaid the Port for the improperly incurred premiums. But this contention ignores the Board's findings in the final order that Greenen's conduct is contrary to the principles that the public expects from a licensed CPA. As the Board's Executive Director aptly stated during her testimony at Greenen's disciplinary hearing:

> [Greenen] obtained benefits for an ineligible person for a significant period of time while she was a licensed CPA, and that relates to the public's expectations of what a licensed CPA will or will not do. A licensed CPA's conduct. And that includes a licensed CPA regardless of what arena in which they are working.

Administrative R./Tr. at 152.

¶32 Greenen also fails to demonstrate how the Board's final order was arbitrary or capricious. She argues that the Board's final decision invades her personal privacy. But the Board disciplined Greenen for consistent and purposeful misrepresentations over several years that had an adverse fiscal impact on her employer while she was a licensed CPA employed as an account manager. These facts and circumstances are not so personal as to invalidate the Board's jurisdiction under former RCW 18.04.295(2). Further, the record does not support Greenen's assertion that her case "open[s] all Washington CPAs' non-professional lives to scrutiny and sanction by a state agency." Br. of Appellant at 33. Greenen was employed by a state agency as an account manager with certain fiscal responsibilities, she was a licensed CPA, and yet she consistently and dishonestly obtained medical benefits for an unqualified person at her employer's expense. Her refusal to recognize that her dis-

honesty and fiscal irresponsibility cannot be endorsed by the CPA profession and the Board certainly recommends that she review the profession's ethics.

¶33 Finally, the Board's final order demonstrates that the Board exercised restraint and carefully evaluated the facts. The Board exonerated Greenen on four charges. And the discipline imposed by the Board for her violation of former RCW 18.04.295(2) and former WAC 4-25-910(2)(a)-(ii)-(iii) consisted of an ethics class, an ethics exam, and two fines allowed by the statute: $1,000 and to reimburse 80 percent ($8,120) of the Board's investigative and legal costs incurred in her proceedings.

¶34 Given the specific facts and circumstances here, coupled with the weight we give to the Board's interpretation of the Act, Greenen fails to demonstrate that the Board's final decision was unreasonable and therefore reversible error. We affirm the Board's final order disciplining Greenen for violating former RCW 18.04.295(2) and former WAC 4-25-910(2)(a)(ii)-(iii).

BRIDGEWATER, J., concurs.

¶35 ARMSTRONG, J. (dissenting) — Because the State Board of Accountancy (Board) lacks jurisdiction to discipline Greenen for activities totally unrelated to her Certified Public Accountant (CPA) status or work, I dissent.

¶36 Under former RCW 18.04.295(2) (1992), the Board has jurisdiction to discipline a CPA for "dishonesty, fraud, or negligence *while representing oneself as a CPA*." (Emphasis added.) While the legislature may well have intended this language to broaden the Board's authority and jurisdiction when it amended the statute in 1992, the statute still requires some connection between the dishonesty or fraud and Greenen's CPA work or status. Specifically, the Board has jurisdiction only if the dishonesty or fraud occurs while Greenen *is representing* herself as a CPA. The Board heard no evidence that connected Greenen's CPA work or status to the health insurance form listing her former husband as a beneficiary. She did not use her accounting position or skills

to either fill out or process the form. In short, the Board heard no evidence that Greenen was representing herself as a CPA in processing the form.

¶37 The majority goes too far, writing out the words "representing oneself" from the statute, and concluding that the Act gives the Board authority to discipline Greenen for misrepresenting her husband's eligibility while she was a licensed CPA and working as an account manager. And it justifies this end by a full examination of the legislative history, circumventing our basic rule of statutory construction that we start with a statute's plain meaning, giving effect to that meaning as an expression of legislative intent. *See Dep't of Ecology v. Campbell & Gwinn, L.L.C.*, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002) (citing *State v. J.M.*, 144 Wn.2d 472, 480, 28 P.3d 720 (2001)).

¶38 Indeed the plain meaning rule requires courts to consider legislative purposes or policies " 'appearing *on the face of the statute* as part of the statute's context.' " *Campbell & Gwinn*, 146 Wn.2d at 11 (emphasis added) (quoting 2A NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 48A:16, at 809-10 (6th ed. 2000)). Also, judicial notice of background facts may be proper. *Campbell & Gwinn*, 146 Wn.2d at 11. But the majority fails to recognize that, in general, a court must construe and apply words according to their ordinary meanings. *Campbell & Gwinn*, 146 Wn.2d at 11 (citing same). It is not appropriate to resort to aids of construction, such as legislative history, until we have examined the plain meaning and found the statute ambiguous or susceptible to more than one reasonable meaning. *See Campbell & Gwinn*, 146 Wn.2d at 12 (citing *Cockle v. Dep't of Labor & Indus.*, 142 Wn.2d 801, 808, 16 P.3d 583 (2001)); *Timberline Air Serv., Inc. v. Bell Helicopter-Textron, Inc.*, 125 Wn.2d 305, 312, 884 P.2d 920 (1994). When a statute is unambiguous, we assume the legislature means exactly what it says and that it intends no superfluous words. *See State v. J.P.*, 149 Wn.2d 444, 450, 69 P.3d 318 (2003); *Campbell & Gwinn*, 146 Wn.2d at 11; *see also In re Recall of Pearsall-*

*Stipek*, 141 Wn.2d 756, 767, 10 P.3d 1034 (2000) (quoting *Greenwood v. Dep't of Motor Vehicles*, 13 Wn. App. 624, 628, 536 P.2d 644 (1975)).

¶39 Here, the meaning of "represent" is not ambiguous. While there are several "ordinary" meanings of "represent," here, only one fits. As a licensed professional, a CPA has certain duties, rights, and benefits; thus, the most appropriate definition of "represent" is "to . . . perform the duties, exercise the rights, or receive the share of." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY, at 1926 (1969). The rule makers could have easily written *"while a licensed CPA"* or "while one *is* a CPA." Instead, they chose to limit application of the rule to instances in which a person "represents" herself as a CPA. To read the statute as the majority does renders the word "representing" superfluous. In my view, the more logical reading of the rule describes a person's conduct while she *performs the duties or exercises the rights of* a CPA.

¶40 The majority's view extends the Board's authority to any on-the-job misconduct by Greenen. If Greenen had exceeded the speed limit while driving a Port vehicle, the Board would have jurisdiction because she sped "while she was employed as an account manager and while holding a CPA license." The legislature did not grant the Board such broad authority. I would reverse and dismiss.

Reconsideration denied June 2, 2005.