# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| DAVID and NANCY HONEYWELL, d/b/a/ ORCA DREAMS LLC, | ) ) ) | No. 75457-2-I |
| Appellants, | ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| WASHINGTON STATE DEPARTMENT OF ECOLOGY, | ) ) ) | |
| Respondent. | ) ) | FILED: October 16, 2017 |

TRICKEY, J. — David and Nancy Honeywell d/b/a Orca Dreams LLC (collectively, the Honeywells) appeal a decision of the Shorelines Hearings Board (SHB). The SHB affirmed the Washington State Department of Ecology's (DOE) $55,000 shoreline violation civil penalty against the Honeywells. The Honeywells argue that the SHB erred in concluding that cutting each regulated tree was a separate violation of the Shoreline Management Act of 1971 (SMA), chapter 90.58 RCW; acted arbitrarily and capriciously when it affirmed the DOE's use of a penalty matrix; erred in finding that 80 regulated trees were cut; and erred in concluding that the penalty the DOE imposed was reasonable. Finding no error, we affirm.

## FACTS

In July 2013, the Honeywells purchased 30 acres of land on the southwestern shoreline of San Juan Island after winning the Powerball lottery. They later purchased 10 more acres. The Honeywells intended to develop the property into a family retreat, including building a new primary residence. The waters adjacent to the Honeywells' property are categorized as a "shoreline of statewide significance" under the SMA.

In the fall of 2013, the Honeywells hired Ben Engle to trim brush on the property.[1] Engle worked on the property extensively, and the Honeywells paid him and his crew over $50,000.

On December 13, 2013, John Genuich, the chief building official for San Juan County (the County), responded to a complaint of tree cutting on the Honeywells' property. Genuich saw that approximately 200 yards of hillside along the slope had been completely cleared of trees and vegetation. He posted a stop work order.

On December 14, 2013, David Honeywell observed the condition of the hillside for the first time. The Honeywells then began to rectify the damage.

On December 16, 2013, County code enforcement officer Christopher Laws and DOE supervisor Paul Anderson visited the Honeywells' property. Laws and Anderson documented the damage. Laws posted a County emergency order, which required the Honeywells to stop work on the shoreline and install sediment and erosion controls. The DOE and the County agreed that the County would lead the enforcement action and that the DOE would provide technical assistance.

On February 6, 2014, the County issued a notice of violation (NOV) for the shoreline clearing. The County assessed the Honeywells and Engle separate $1,000 penalties. The Honeywells were required to develop a restoration plan by

---

[1] The Honeywells repeatedly emphasize that they did not order Engle to cut the trees. The Honeywells do not argue that they are not proper parties to this case or that Engle should be solely responsible for the penalty.

2

March 27, 2014.

The Honeywells worked toward complying with the NOV, and Laws granted the Honeywells an extension to August 31, 2014. Anderson grew concerned because he had not been consulted about the extension and he believed that the restoration should be completed as soon as possible.

In June 2014, Anderson and Doug Gresham, a DOE wetland biologist, visited the Honeywells' property to collect data on the size and type of trees that had been cut. Anderson counted 80 stumps of trees with diameters from 5 to 32 inches, which would have had a diameter at breast height of at least 3 inches. Based on his calculations, Anderson determined that "the riparian forest that had been cleared was at least an 80-year-old stand."[2] Northwest Ecological Services, LLC (NES), a company the Honeywells retained, prepared a report that concluded that 34 Douglas firs and alders were cut and 33 Scouler's willows were cut.[3]

The DOE's Shorelines Environmental Assistance (SEA) program imposed a shoreline penalty of $55,000 on the Honeywells for the unauthorized removal of vegetation, including the 80 trees counted by Anderson and Gresham. The DOE treated the cutting of each tree with a diameter greater than 5 inches as a separate violation. The SEA program developed a penalty matrix that categorized cut trees based on their size, which resulted in a $56,000 penalty. The DOE credited the

---

[2] Administrative Record (AR) at 1593.
[3] At the SHB hearing, the parties argued on the issue of whether or not Scouler's willows were trees. See, e.g., Report of Proceedings (RP) (July 22, 2015) at 308-09 (Anderson's testimony about whether Scouler's willows were classified as trees). Honeywell is not challenging the classification of Scouler's willows as trees on appeal.

Honeywells for the $1,000 civil penalty already issued by the County, which reduced the penalty to $55,000.

The Honeywells filed a petition for review of the shoreline penalty with the SHB. The SHB ruled on summary judgment that the DOE had the authority to impose a civil penalty separate from the County and that the penalty amount was not capped at $1,000. The SHB held a hearing and affirmed the $55,000 civil penalty.

The Honeywells appealed the SHB's decision to the Island County Superior Court. The trial court affirmed the SHB's decision.

The Honeywells appeal.

## ANALYSIS

### Each Regulated Tree as a Separate Violation

The Honeywells argue that the SHB erred in affirming the DOE's penalty because RCW 90.58.210 and WAC 173-27-280 limit the DOE to imposing a $1,000 penalty per violation and the Honeywells' single violation was cutting regulated trees without a permit.[4] Because we conclude that it is proper to consider each cut tree as a separate violation, we disagree.[5]

---

[4] The Honeywells also contend that the SHB erred by approving the DOE's penalty because the DOE exceeded its rule making authority when it promulgated WAC 173-27-260 and WAC 173-27-280. The Honeywells did not raise this issue before the SHB or the Island County Superior Court. "Issues not raised before the agency may not be raised on appeal" absent specified circumstances. RCW 34.05.554(1). The circumstances under which a party may raise an issue for the first time on appeal are not present here. RCW 34.05.554(1)(a)-(d). We decline to address this argument.

[5] The Honeywells argue that the SHB erred in affirming the DOE's civil penalty because the DOE's actions are inconsistent with the regulatory reform act of 1995. Chapter 43.05

4

This court looks to a statute's plain language to determine the statute's meaning. Campbell v. Dep't of Soc. & Health Servs., 150 Wn.2d 881, 894, 83 P.3d 999 (2004). A statute is ambiguous if it is subject to more than one reasonable interpretation. City of Seattle v. Winebrenner, 167 Wn.2d 451, 456, 219 P.3d 686 (2009).

If a statute's plain language is ambiguous, this court may review the statute's legislative history, including legislative bill reports, to help determine a statute's intent. Dep't of Ecology v. Campbell & Gwinn, L.L.C., 146 Wn.2d 1, 11-12, 43 P.3d 4 (2002). This court looks to the whole statute and must interpret it to avoid absurd results. Pub. Util. Dist. No. 1 of Pend Oreille County v. Dep't of Ecology, 146 Wn.2d 778, 791, 51 P.3d 744 (2002). The SMA must be "liberally construed to give full effect to the objectives and purposes for which it was enacted." RCW 90.58.900.

Local governments are charged with developing Shoreline Master Programs (SMPs) to protect Washington's shorelines. RCW 90.58.020. SMPs may be enforced through the use of civil penalties:

> (1) Except as provided in RCW 43.05.060 through 43.05.080 and 43.05.150, the attorney general or the attorney for the local government shall bring such injunctive, declaratory, or other actions as are necessary to ensure that no uses are made of the shorelines of the state in conflict with the provisions and programs of this chapter, and to otherwise enforce the provisions of this chapter.

---

RCW (LAWS of 1995, ch. 403). The SHB's decision, verbatim report of proceedings, and clerk's papers do not show that Honeywell argued below that the DOE's acts were inconsistent with the regulatory reform act. We decline to reach the merits of this argument. RCW 34.05.554(1).

(2) Any person who shall fail to conform to the terms of a permit issued under this chapter or who shall undertake development on the shorelines of the state without first obtaining any permit required under this chapter shall also be subject to a civil penalty not to exceed one thousand dollars for each violation. Each permit violation or each day of continued development without a required permit shall constitute a separate violation.

RCW 90.58.210(1), (2). WAC 173-27-280 provides the DOE with authority to impose a civil penalty for violation of the SMA:

(1) A person who fails to conform to the terms of a substantial development permit, conditional use permit or variance issued under RCW 90.58.140, who undertakes a development or use on shorelines of the state without first obtaining a permit, or who fails to comply with a cease and desist order issued under these regulations may be subject to a civil penalty by local government. The [DOE] may impose a penalty jointly with local government, or alone only upon an additional finding that a person:

(a) Has previously been subject to an enforcement action for the same or similar type of violation of the same statute or rule; or

(b) Has been given previous notice of the same or similar type of violation of the same statute or rule; or

(c) The violation has a probability of placing a person in danger of death or bodily harm; or

(d) Has a probability of causing more than minor environmental harm; or

(e) Has a probability of causing physical damage to the property of another in an amount exceeding one thousand dollars.

. . . .

(3) Amount of penalty. The penalty shall not exceed one thousand dollars for each violation. Each day of violation shall constitute a separate violation.

"Although the SMA directs each local government to develop and administer its SMP, the state has an extensive, statutorily-mandated role in the development

6

and administration of SMPs." <u>Citizens for Rational Shoreline Planning v. Whatcom County</u>, 155 Wn. App. 937, 943, 230 P.3d 1074 (2010), <u>aff'd</u>, 172 Wn.2d 384, 258 P.3d 36 (2011).

The San Juan SMP (SJSMP) provides land use regulations that apply to "all of the land and waters of San Juan County which fall under the jurisdiction of the [SMA]." SAN JUAN COUNTY CODE (SJCC) 18.50.020(A). "Clearing and grading activities are allowed only if: (1) associated with an approved shoreline development; (2) conducted only landward of a required building setback from shorelines; and (3) disturbed areas not converted to another use within one year are replanted with native species." SJCC 18.50.060(A). "Removal of trees smaller than three inches in diameter, as measured four feet above grade, shall not be restricted unless there is evidence that the shoreline is unstable. The removal of smaller trees, brush, and groundcover may be restricted in unstable shorelines." SJCC 18.50.330(B)(8).[6]

This court reviews an agency's statutory interpretation and legal conclusions de novo under the error of law standard. <u>Greenen v. Bd. of Accountancy</u>, 126 Wn. App. 824, 830, 110 P.3d 224 (2005). Under the error of law standard, the appellate court substitutes its view of the law for that of the

---

[6] The issue on appeal is whether the DOE correctly interpreted RCW 90.58.210 and WAC 173-27-280 as meaning that each cut regulated tree constituted a separate violation under SJCC 18.50.330(B)(8). The Honeywells did not contend below that their removal of the trees was for the "purpose of construction of a single family residence," there was "no dispute that the Honeywells did not submit a tree removal plan prior to the clearing of the slope," and the cleared site was an "unstable slope with poor soil." AR at 1600-01.

administrative board. Verizon NW, Inc. v. Emp't Sec. Dep't, 164 Wn.2d 909, 915, 194 P.3d 255 (2008). But the court "accord[s] substantial weight to an agency's interpretation of a statute within its expertise." Verizon NW, Inc., 164 Wn.2d at 915 (citing Macey v. Dep't of Emp't Sec., 110 Wn.2d 308, 313, 752 P.2d 372 (1998)).

Here, RCW 90.58.210 is arguably ambiguous, as it does not clearly define what acts constitute separate violations. But even if the statute is ambiguous, interpreting RCW 90.58.210 and SJCC 18.50.330(B)(8) as limiting the DOE to a single $1,000 civil penalty per instance of unpermitted cutting, as suggested by the Honeywells, would lead to absurd results. For example, this interpretation would equate one unpermitted tree cutting with an instance in which a hundred regulated trees are cut. Adopting this interpretation would limit the DOE to imposing at most a $1,000 penalty in both situations, despite the significant disparity in the amount of harm caused. RCW 90.58.210 is properly interpreted as allowing the DOE to impose a civil penalty for each tree regulated by SJCC 18.50.330(B)(8) that is cut.

Furthermore, the legislative intent behind the SMA supports allowing the DOE to impose a separate civil penalty for each regulated tree that is cut. The SMA was enacted to protect the shorelines of Washington. RCW 90.58.020. The legislature found that the public interest in maintaining shorelines in their natural state outweighed private interests in developing shoreline property. RCW 90.58.020. The legislature thus restricted development activities to protect "the public health, the land and its vegetation and wildlife, and the waters of the state and their aquatic life." RCW 90.58.020. Restricting the DOE to imposing a single

fine for an entire instance of unpermitted cutting, regardless of the number of regulated trees actually cut, would hinder its ability to enforce the intent of the SMA.

In sum, the SHB did not err when it properly concluded that each cut tree was a separate violation of the SMA, its accompanying regulations, and SJCC 18.50.330(B)(8).[7]

### DOE Penalty Matrix

The Honeywells argue that the SHB acted arbitrarily and capriciously when it affirmed the DOE's use of a penalty matrix that the DOE had not previously used, and which was impermissibly based on the number of regulated trees cut. We disagree.

This court shall grant relief from an agency order if it determines that the order is clearly erroneous or is arbitrary or capricious. RCW 34.05.570(3)(d),(h)(i); Herman v. Shorelines Hearings Bd., 149 Wn. App. 444, 459, 204 P.3d 928 (2009). An agency action is arbitrary or capricious if it "'is willful and unreasoning and taken without regard to the attending facts or circumstances.'" Port of Seattle v. Pollution Control Hearings Bd. (PCHB), 151 Wn.2d 568, 589, 90 P.3d 659 (2004) (internal

---

[7] The Honeywells argue for the first time in their reply brief that this court should look to other statutes, including the water pollution control act (WPCA), chapter 90.48 RCW; Hazardous Waste Management Act, chapter 70.105 RCW; solid waste management act, chapter 70.95 RCW; and the Washington Clean Air Act, chapter 70.94 RCW, to guide its interpretation of the SMA. In the Honeywells' opening brief, they cite the WPCA only when discussing a separate penalty that was dismissed by the trial court but is not at issue on appeal. Also for the first time in their reply brief, the Honeywells argue that the DOE violated their statutory due process rights by failing to give proper notice prior to imposing its penalty. We decline to reach either argument. Cowiche Canyon Conservancy v. Bosely, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

quotations marks omitted) (quoting <u>Wash. Indep. Tel. Ass'n v. Wash. Utils. &</u> <u>Trans. Comm'n</u>, 149 Wn.2d 17, 26, 65 P.3d 319 (2003)). "Where there is room for two opinions, and the agency acted honestly and upon due consideration, this court should not find that an action was arbitrary and capricious, even though this court may have reached the opposite conclusion." <u>Port of Seattle</u>, 151 Wn.2d at 589 (citing <u>Buechel v. Dep't of Ecology</u>, 125 Wn.2d 196, 202, 884 P.2d 910 (1994)).

Here, the DOE considered the number of trees, their diameter, the prior enforcement measures imposed on Honeywell, and the egregious nature of the violation in calculating its penalty. As discussed above, the SMA and SJSMP are properly interpreted as considering each cutting of a regulated tree without a permit as a violation of SJCC 18.50.330(B)(8). The DOE calculated its penalty based on the number of trees and their diameters. The DOE imposed a $250 penalty per tree with a diameter of 5 to 8 inches (11 trees); a $500 penalty per tree with a diameter of 9 to 12 inches (20 trees); a $750 penalty per tree with a diameter of 13 to 16 inches (23 trees); and a penalty of $1,000 per tree with a diameter over 16 inches (26 trees). The total resulting penalty was $56,000. We conclude that the SHB did not act arbitrarily or capriciously when it affirmed the DOE's penalty matrix, which was based on relevant facts and circumstances.

The Honeywells argue that it was arbitrary and capricious to determine the penalty using a penalty matrix that had not been previously used. The Honeywells rely on Anderson's testimony to show that this penalty matrix had not been previously used. But Anderson's belief that this was the first time such a penalty matrix had been used is not relevant. Further, the Honeywells do not cite legal

authority in support of their argument that the DOE is limited to matrixes it has used in the past. The DOE tailored its matrix to the circumstances of this case, and the Honeywells have not shown that it acted willfully and unreasonably while doing so.

Under the arbitrary or capricious standard, this court examines whether the SHB acted willfully and unreasonably without considering the attendant facts or circumstances when it affirmed the DOE's methodology, rather than whether the DOE used methods it had previously applied.[8] We conclude that the SHB did not act arbitrarily or capriciously because it considered the facts and circumstances of the Honeywells' case before affirming the DOE's penalty matrix.

### SHB's Finding that 80 Regulated Trees Were Cut

The Honeywells argue that the SHB's finding that 80 regulated trees were cut was not supported by substantial evidence. Specifically, they argue that the SHB erred when it relied on Anderson's report and testimony, instead of the Honeywells' expert opinions. The DOE contends that the SHB's finding that 80

---

[8] Moreover, the DOE has previously used a similar method of calculating a civil penalty. See Frank v. Dep't of Ecology, SHB No. 11-003, 2011 WL 3398573, at *1 (Wash. Shore. Hrg. Bd. July 29, 2011). In Frank, the DOE imposed a penalty of $15,000 based in part on its conclusion "that up to 15 trees had been removed in violation of the SMP." 2011 WL 3398573, at *7. The SHB reversed the penalty because the DOE did not consider the relevant circumstances and did not tailor the sanction to the seriousness of the violation or in a way that would secure future compliance. Frank, 2011 WL 3398573, at *10. In the present case, the SHB noted that the Frank SHB did not address, and the parties did not challenge, the DOE's use of each tree as a separate violation in determining its penalty. AR at 1599 n.9. We may look to Frank for persuasive authority. See In re Sehome Park Care Ctr., Inc., 127 Wn.2d 774, 780, 903 P.2d 443 (1995) ("In interpreting a statute, we accord great weight to the contemporaneous construction placed upon it by officials charged with its enforcement."). The analysis in Frank supports the SHB's affirmation of the penalty matrix used by the DOE in the present case.

11

regulated trees were cut was supported by Anderson's testimony about how he and Gresham calculated the number of cut regulated trees. We agree with the DOE.

"We review an agency's factual findings to determine whether they are supported by substantial evidence sufficient to persuade a fair-minded person of the stated premise." Providence Health & Servs. v. Dep't of Health, 194 Wn. App. 849, 856, 378 P.3d 249 (2016), review denied, 187 Wn.2d 1003, 386 P.3d 1084 (2017). We will only overturn an agency's factual findings "if they are clearly erroneous, meaning that the entire record leaves us with the firm and definite conviction that a mistake was made." Providence Health, 194 Wn. App. at 856-57. The substantial evidence test does not allow us to reverse an agency's finding because we would have ruled differently had we been the trier of fact. Callecod v. Washington State Patrol, 84 Wn. App. 663, 676 n.9, 929 P.2d 510 (1997).

An agency's credibility determinations are not subject to review on appeal. Yow v. Dep't of Health, 147 Wn. App. 807, 820, 199 P.3d 417 (2008). "We will not substitute our judgment on credibility of witnesses or the weight of conflicting evidence." Regan v. Dep't of Licensing, 130 Wn. App. 39, 49, 121 P.3d 731 (2005).

Here, the SHB found that the Honeywells had removed 80 trees within 200 feet of the shoreline. The SHB found that each removed tree with a stump greater than 5 inches in diameter was a separate violation.

The record contains substantial evidence supporting this finding. Anderson testified that he and Gresham counted the stumps and measured their diameter. After adjusting the count to account for "decadent or decayed" stumps and other

unregulated trees, Anderson and Gresham concluded that 80 regulated trees had been cut.[9] The tree count compiled by Anderson and Gresham formed the basis of the DOE's penalty matrix, which was based on the number of cut trees in each band of diameter measurements at the stump. We conclude that the SHB's finding that 80 trees were cut is supported by substantial evidence in the record.

The Honeywells argue that the SHB's finding is not supported by substantial evidence because the Honeywells submitted contrary evidence. The Honeywells retained two biologists, Thor Hanson and Vikki Jackson, who reached a different count. A report prepared by NES, that was based on the count reached by Hanson and Jackson, showed that 34 trees greater than 3 inches in diameter at the cut height were identified along with 33 willows. Neither Hanson nor Jackson testified at the hearing. The Honeywells argue that the SHB erred when it did not credit the NES report over the evidence offered by the DOE. The Honeywells also contend that Anderson's testimony was not reliable because Anderson did not spend sufficient time at the site, did not accurately identify the species of the cut trees, and that he lacked the proper credentials to give a valid opinion.

We disagree. The SHB was free to credit the testimony of Anderson over the opinions of Hanson and Jackson contained in the NES report. The Honeywells' arguments go to Anderson's credibility and the weight that the SHB should have given to the NES report. The SHB's determinations on those issues are not subject to review on appeal.

---

[9] RP (July 22, 2015) at 307.

## Reasonableness of Penalty

The Honeywells argue that, even if a civil penalty greater than $1,000 for violations of the SMA is legally justifiable, the SHB acted arbitrarily and capriciously when it affirmed the DOE's penalty of $55,000 because the amount of the penalty was unreasonable. The DOE argues that the SHB correctly concluded that the $55,000 penalty was reasonable because the incident was egregious and the penalty would deter the Honeywells and other potential violators from future violations. We agree with the DOE.

When reviewing the reasonableness of a penalty, the SHB considers "(1) the nature of the violation, (2) the prior history of the violator, and (3) the remedial actions taken by the penalized party." Herman v. Dep't of Ecology & Spokane County, SHB No. 04-019, 2005 WL 1935493, at *9 (Wash. Shore. Hrg. Bd. July 27, 2005). The SHB also "considers whether the agency, in setting the penalty, considered the circumstances and made an attempt to select the level of sanction appropriate to change behavior and secure compliance." Frank v. Dep't of Ecology, SHB No. 11-003, 2011 WL 3398573, at *9 (Wash. Shore. Hrg. Bd. July 29, 2011).

We review the Board's decision to determine "whether the decision is clearly erroneous in view of the entire record and the public policy contained in the [SMA], or whether the decision was arbitrary or capricious." Buechel, 125 Wn.2d at 201-02.

*Nature of the Incident*

14

The Honeywells argue that the SHB erred because it affirmed the DOE penalty based solely on the nature of the incident.[10] The DOE contends that the SHB properly gave the most weight to this factor because the incident was egregious and caused serious environmental harm. We agree with the DOE.

The SHB found that the nature of the incident was the most compelling factor in its evaluation of the reasonableness of the civil penalty. The SHB noted that the parties agreed that the cutting of the trees and clearing of the hillside was an "egregious violation of the SMA and SJSMP," and that the incident created significant environmental harm.

The record amply supports this conclusion. Because of the Honeywells' unpermitted cutting of regulated trees, the shoreline will not benefit from the protection a marine riparian forest normally provides. This lack of protection will lead to many long-term detriments, including increased damage from rainfall, vulnerability to erosion, and lack of slope stability. Marine riparian forests also benefit society by increasing human health and safety and protecting the aesthetic values of an intact shoreline. Moreover, several "critical habitat" areas will be affected by the incident. Therefore, the SHB did not err when it concluded that the nature of the incident favored a conclusion that the DOE's penalty was reasonable.

---

[10] The Honeywells do not elaborate on their assertion that the SHB relied solely on this factor in affirming the penalty. Further, the Honeywells do not cite to legal authority in support of the argument that the SHB must give equal weight to each factor or that the SHB cannot take the amount of evidence supporting each factor into consideration.

The Honeywells argue that the SJSMP does not restrict the removal of vegetation or trees with less than 3 inches diameter at breast height. This is irrelevant in the present case. The DOE's penalty matrix included only trees with a stump diameter of 5 inches or greater. The DOE did not penalize the Honeywells for the removal of vegetation other than regulated trees.

*The Honeywells' Prior History*

The parties agree that the Honeywells do not have a prior history of violations.

*Remedial Actions Taken*

The Honeywells contend that the SHB erred in concluding that the penalty was reasonable because the Honeywells took every remedial action possible after the incident. The Honeywells list the remedial actions they have taken, but do not argue that the SHB failed to consider these actions when determining whether the penalty was reasonable. In its findings of fact, the SHB acknowledged the Honeywells' efforts to address the incident. The SHB stated that one of the factors it considered in determining the reasonableness of the penalty was "the remedial actions taken by the penalized party."[11] The SHB demonstrated that it was aware of the Honeywells' restoration efforts and their relevance to its determination of reasonableness. Thus, the SHB did not fail to account for the Honeywells' remedial actions in its determination of reasonableness.

---

[11] AR at 1601.

16

*Ensure Compliance*

The Honeywells argue that the SHB erred by affirming a penalty designed to deter others. The DOE argues that civil penalties may be used to deter others from unlawful conduct, especially where the violator has obtained a benefit unavailable to law-abiding landowners. We agree with the DOE.

"A civil penalty is primarily intended to coax compliance with the law and deter future violations." Herman, 149 Wn. App. at 460. Imposing civil penalties also "ensures a level playing field" for those who make efforts to comply with environmental laws and regulations. Pacific Topsoils, Inc. v. Dep't of Ecology, PCHB Nos. 07-046 & 07-047 (consol.), 2008 WL 5510416, at *16 (Wash. Pollution Control Bd., June 12, 2008).

The SJSMP restricts landowners from developing certain areas of the shoreline without prior approval. SJCC 18.50.060(A)(1), (2). Although a landowner may construct a single-family residence, he or she must obtain a tree removal plan if he or she wants to remove trees beyond the scope of the residential construction. SJCC 18.50.330(A), (B)(8). The tree removal plan must "[d]emonstrate how existing natural screening will be retained while providing for construction, views, and sunlight." SJCC 18.50.330(B)(8)(b).

Here, the SHB concluded that

[t]he clearing work had the end result of creating unobstructed water views from cabins six, seven and eight, and from the northwest side of the Honeywells' new house. Intended or not, this was a special benefit to the Honeywells. Real estate with shoreline views is valued

at a premium. Other landowners that comply with the SJSMP will not be able to obtain this type of unobstructed view.[12]

Further, the SHB noted that the DOE was concerned because the Honeywells indicated that they were going to replant the shoreline with shorter-stature trees, instead of replacing the taller species of trees that had been cut down.

The Honeywells have realized a benefit that would not otherwise be available to landowners who comply with environmental laws and regulations. The civil penalty imposed by the DOE will serve to deter the Honeywells. The SHB did not err in affirming the civil penalty to ensure compliance with the law and create a "level playing field" for other landowners.

The Honeywells argue that the DOE improperly intended the penalty to deter other landowners because DOE witnesses testified to the SHB that the Honeywells were unlikely to be future violators. The Honeywells do not cite legal authority in support of their argument. Further, the Honeywells' argument fails for two reasons. First, the civil penalty imposed by the DOE was within its discretion and reasonable even without the purpose of deterring the Honeywells from future violations. Second, the DOE offered testimony indicating that the purpose of the penalty was to deter other landowners from future violations, while the SHB recognized that the penalty accounted for the Honeywells realizing a benefit unavailable to other landowners. We conclude that the DOE's argument was not improper.

---

12 AR at 1602.

The Honeywells also argue that the SHB erred in affirming the DOE's civil penalty because the DOE improperly imposed the civil penalty with the goal of deterring others from engaging in similar conduct. The Honeywells assert that state and federal law only permit imposing a civil penalty for the purpose of deterring that specific violator from future violations. The Honeywells cite Herman to argue that a civil penalty should be imposed only when a violator continually violates the SMA or fails to comply with a prior agreement with government agencies. 149 Wn. App. 444, 450-53, 459-60, 204 P.3d 928 (2009). The Honeywells next cite Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc. for the proposition that the purpose of a civil penalty is to deter future violations by the specific violator at issue, and cannot be used to deter the behavior of others. 528 U.S. 167, 186, 120 S. Ct. 693, 145 L. Ed. 2d 610 (2000).

Neither case supports the Honeywells' position that state or federal law prohibits an agency from considering the deterrent effect a civil penalty will have on future violators other than the specific violator at issue. The Herman court did not address this issue. 149 Wn. App. at 460. Friends of the Earth, Inc. involved two private parties and the United States Supreme Court focused its analysis on the plaintiff's standing and available remedies. 528 U.S. at 192-93. The Supreme Court did not hold that a court or agency could not consider the deterrent effect on other future violators when determining its penalty. We conclude that neither case supports the Honeywells' position and that the DOE was permitted to consider the deterrent effect imposing a civil penalty would have on other future violators.

## DOE Bias

The Honeywells argue that the SHB erred by allowing the DOE to act with improper bias toward the Honeywells. Specifically, the Honeywells contend that the DOE improperly considered that the Honeywells had won the lottery and was acting in response to pressure from environmental groups. The Honeywells did not assign error to the DOE's alleged bias, and have not argued that the SHB erred on this issue. RAP 10.3(a)(4), (6). We decline to address this issue on appeal.

Affirmed.

_Trickey, J_

WE CONCUR:

_Verellen_

_Appelwick, J_